NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

The GREAT ATLANTIC AND PACIFIC
TEA COMPANY, Inc., Respondent.

No. 25922.

United States Court of Appeals
Fifth Circuit.

March 25, 1969.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Atty., NLRB, Washington, D. C., for petitioner.

David A. Bartholf, Jacksonville, Fla., for respondent.

Before WISDOM, THORNBERRY and GOLDBERG, Circuit Judges.

THORNBERRY, Circuit Judge:

The Board petitions for enforcement of an order issued against the Great Atlantic and Pacific Tea Company for the commission of two unfair labor practices. The first involves a finding by the Board that the Company violated Section 8(a) (3) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (3) and (1), by announcing the award of a new employment benefit when a Board election was pending, and by granting that benefit to all area employees except those in the voting unit.[1] The alleged violation occurred after two elections conducted among the employees constituting the election unit had been set aside by the Board due to Company interference in the form of unilateral pay increases and promises of future pay raises. On April 26, 1967, two weeks after the second election had been set aside and during the pendency of the third election, the Company issued a letter to the employees in the election unit explaining that they would not receive an additional paid holiday being granted to all other area employees due to the pending election. The letter further stated:

\* \* \* the reason for this is because the National Labor Relations Board has said that an employer shall not increase or decrease the benefits its employees are receiving while an election is pending. As a matter of fact, the reason we are having to go through another election is because of the increase in the wages which was given to many of our Orlando and Winter Park employees before the last election. Therefore, we are unable to include you in this additional holiday.

We are sure that you are just as tired of this union business and rerun of elections as we are, and we regret that we are unable to give you this additional holiday. We are sure that were we to grant this additional holi-

---

1. Compare NLRB v. Exchange Parts Co., 1965, 375 U.S. 405, 409, 84 S.Ct. 457, 459, 11 L.Ed.2d 435, where the Supreme Court held that an employer violates the Act by conferring economic benefits on his employees shortly before a representation election "with the intention of inducing the employees to vote against the union." Although *Exchange Parts* involved the granting of a benefit whereas the instant case involves the discriminatory withholding of a benefit, the decision established the principle, equally apposite here, that changes in employment conditions motivated by a design to affect the outcome of an election are unlawful.

The legality of the initiation of the new holiday is not in issue here despite some suggestions contained in the Board's brief that the Company may have *granted* the benefit in the first place in order to create a disparity between the employees comprising the election unit and other area employees. The sole issue is whether the Company's action in *withholding* the benefit from the employees in the election unit is unlawful.

day to you prior to this election, the union would again file charges as they have in the past that the Company cheated in the election by buying votes. The union then filed unfair labor practice charges and the third election was postponed pending their resolution.

■ The unfair labor practice charged here is based primarily on Section 8(a) (3) of the Act which proscribes discrimination in regard to "any term or condition of employment to encourage or discourage membership in any labor organization." There is little question that the withholding of the vacation benefit from those in the voting unit while granting it to other employees constitutes discrimination against those who are distinguishable only by their participation in protected activity and that such discrimination may to some extent discourage membership in a labor organization by inducing the employees to vote against the union. The Company, recognizing its obligation in such circumstances to demonstrate that it was motivated by "legitimate objectives," NLRB v. Great Dane Trailers, Inc., 1967, 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L. Ed.2d 1027, argues that it *withheld* the benefit from employees in the voting unit solely in order to avoid being found guilty again of buying votes by *granting* a new benefit, as it had done prior to the two previous elections.

■ It is unnecessary to decide whether the justification advanced by the Company would qualify as a "substantial and legitimate business end," NLRB v. Brown, 1965, 380 U.S. 278, 289, 85 S.Ct. 980, 987, 13 L.Ed.2d 839, sufficient to defeat an unfair labor practice charge in the absence of an affirmative showing of improper intent[2] for we hold that substantial evidence supports the Board's finding of an unlawful motivation.[3] The Company's interference with prior elections, though not conclusive, affords some indication that its present motivation may have been unlawful. NLRB v. Exchange Parts Co., 1964, 375 U.S. 405, 410, 84 S.Ct. 454, 456, 11 L.Ed.2d 435. When the Company sent its letter on April 26, neither the union nor any of the employees in the unit had raised any questions about the additional holiday. Finally, the letter speaks for itself. Plainly it was more than an informational notice, and was intended to turn the employees against the union by blaming it for the loss of the additional holiday. In all the circumstances, we think substantial evidence supports the Board's finding that the Company's conduct "was a tactical maneuver designed to discriminate against employees, and to interfere with the employees' freedom of choice in violation of Section 8(a) (3) and (1)."

■■ The Board also found that the Company violated Section 8(a) (1) by threatening an employee, William J. Cairns, with discharge for refusing to give information concerning the union

2. "When the resulting harm to employee rights is thus comparatively slight, and a substantial and legitimate business end is served, the employers' conduct is prima facie lawful. Under these circumstances the finding of an unfair labor practice under § 8(a)(3) requires a showing of improper subjective intent." NLRB v. Brown, *supra*, 380 U.S. at 289, 85 S.Ct. at 987. *Accord* NLRB v. Great Dane Trailers, Inc., *supra*, 388 U.S. at 34, 87 S.Ct. at 1798.

3. Therefore, even if the legal dilemma erected by the Company would in some circumstances render employer conduct prima facie lawful, the evidence of anti-union motive, which "may make unlawful certain employer conduct which would in other circumstances be lawful," NLRB v. Great Dane Trailers, Inc., *supra* 388 U.S. at 33, 87 S.Ct. at 1797, would obviate the justification in this instance.

We also do not reach the Board's alternative contention that the Company's conduct was "inherently destructive" of important employee rights within the meaning of NLRB v. Great Dane Trailers, Inc., *supra* and NLRB v. Erie Resistor Corp., 1963, 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308, in which event the Board would be relieved of the burden of proving improper subjective intent.

to the Company's attorney.[4] There is no question that the conduct of the Company supervisor constituted an unlawful threat. Although an employer has a legitimate interest in investigating charges against it, Texas Industries, Inc. v. NLRB, 5th Cir. 1964, 336 F.2d 128, 133, a threat of discharge for an employee's refusal to answer questions constitutes unlawful coercion. Montgomery Ward & Co. v. NLRB, 6th Cir. 1967, 337 F.2d 452, 455–456. The Company argues, however, that the threat was cured by two letters, one addressed to all the employees, and one addressed to Cairns containing an assurance "that so long as you do your work properly you will have a job with the company" and reminding him that the personnel manager had "expressed that thought in his letter to all the employees." The first letter did not relate to the threat. The second letter, written to Cairns on August 8, came after the filing of the unfair labor practice charge. The Board was therefore justified in concluding that the subsequent assurances did not "erase the coercive effect of these prior intimidatory statements." United States Rubber Co. v. NLRB, 5th Cir. 1967, 384 F.2d 660, 664.

 Having concluded that substantial evidence on the record as a whole supports the Board's findings of unfair labor practices, we turn now to the Board's order. With regard to the threat, Paragraph 2(c) of the order requires the posting of appropriate notices in all eight stores included in the election unit. Although the Company maintains that the posting of a notice in the North Orange store where Cairns worked would be sufficient to remedy the violation, the Board's order appears suited to effectuate the policy of the Act and should be enforced. With regard to the

vacation benefit withheld from the employees in the election unit, Paragraph 2(a) of the order requires the Company to "make the employees whole * * * by granting the benefits that were instituted on April 26, 1966 *with interest* * * *." (Emphasis added). We are unable to ascertain how the Company is to discharge its obligation to grant the vacation benefit with interest. Accordingly, we think enforcement of Paragraph 2(a) of the order should be withheld pending remand to the Board for clarification. When the Board issues a clarifying order as a result of such proceedings, the order shall be made a supplemental part of the pending record for our final action and decree. NLRB v. Acme Air Appliance, Inc., 2d Cir. 1941, 117 F.2d 417, 423; NLRB v. Somerset Shoe Co., 1st Cir. 1940, 111 F.2d 681, 690. The remaining portions of the order are hereby enforced.

Enforced in part; remanded in part.

---

4. The parties stipulated that:
"During the middle of March 1966, Respondent, by its supervisor, Leonard Richardson, told an employee, William J. Cairns, at the North Orange Ave. Orlando store, that Respondent's attorney, David Bartholf, threatened to have said employee discharged because he failed to cooperate and give information to Mr. Bartholf concerning the Union and its activities during an investigation by Mr. Bartholf of charges which had been filed against Respondent.