**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WYLIE MANUFACTURING COMPANY, Respondent.**

No. 56–69.

United States Court of Appeals
Tenth Circuit.

Oct. 17, 1969.

Baruch A. Fellner (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allison W. Brown, Jr., Washington, D. C., were with him on the brief), for petitioner.

Edward B. Miller, Chicago, Ill. (Michael A. Warner, Chicago, Ill., and William F. Schoeberlen, Denver, Colo., and Pope, Ballard, Kennedy, Shepard & Fowle, Chicago, Ill., and Dawson, Nagel, Sherman & Howard, Denver, Colo., of counsel, were with him on the brief), for respondent.

Before PHILLIPS, BREITENSTEIN and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The National Labor Relations Board found that respondent Wylie Manufacturing Company had committed unfair labor practices in violation of § 8(a) (1) and (5) of the National Labor Relations Act as amended, 29 U.S.C. § 151 et seq., and petitions for enforcement of its order. See 162 NLRB 799 and 170 NLRB No. 112.

The Company manufactures asphalt equipment in Oklahoma City, Oklahoma. During the latter part of February, 1966, Local 850, International Association of Machinists and Aerospace Workers, AFL–CIO, began an organizational campaign among the Company's employees. The Company soon became aware of the activity. Beginning on February 25 and continuing until the latter part of March the plant manager and two foremen interrogated various employees and made statements to them derogatory of the Union. On March 7 about 30 of 36 unit employees had signed cards authorizing the Union to represent them in collective bargaining and the Union made a written request for recognition and bargaining negotia-

tions. The Company refused the request. The Union lost a consent election held on March 29 by a vote of 18 to 17 and thereafter filed with the Board a complaint charging unfair labor practices. After a hearing the Examiner found violations of § 8(a) (1) and (5). The Board affirmed the Examiner in all respects.

The Company then petitioned to reopen the proceedings on the ground that the authorization cards were obtained by coercion. The Board granted the request and another hearing was held. The Examiner found that out of 26 valid and unambiguous authorization cards one had been secured by the coercive conduct of one employee. He held that this was insufficient "to establish a pervasive pattern of threats coercion or intimidation" in the Union's campaign to secure the cards. The Board affirmed the Examiner.

■ No good purpose will be served by detailing the conflicting testimony. Six employees testified to a variety of statements by three supervisors which, if believed, were sufficient to establish § 8(a) (1) violations. The three supervisors denied the statements. At the hearing on the coercion issue the Company presented five witnesses and the General Counsel two. The Examiner carefully delineated the reasons for his credibility findings. Credibility findings are peculiarly within the province of the Examiner and the Board and are ordinarily entitled to affirmance on review. American Sanitary Products Co. v. National Labor Relations Board, 10 Cir., 382 F.2d 53, 55, and National Labor Relations Board v. United Nuclear Corporation, 10 Cir., 381 F.2d 972, 976. The Company attacks the application of the rule on two grounds. It points out that the Examiner discredited employee Mosley, as prone to exaggerate, when considering his testimony regarding the unfair labor practices charged to the Company but believed his testimony at the second hearing. The Examiner was aware of the situation and commented

thereon. It appears to us that the Examiner's decision to credit Mosley's denial of threats was based primarily on defects in the testimony that the threats were made. We cannot say that the decision to believe Mosley on the coercion issue was wrong.

The Company also contends that the Examiner should have reevaluated his first hearing credibility findings in the light of the evidence of union coercion adduced at the second hearing. Of those employees previously found credible, Dalton was the only one whose character was impugned at the second hearing. Dalton did not testify at that hearing. The finding that Dalton coerced some employees to sign cards does not necessarily mean that he lied concerning management statements to him of threats and reprisals. We are impressed with the care used by the Examiner in making his credibility findings and we will not disturb them.

■ The Board found that the Company violated § 8(a) (1) by interrogation of employees, by threats of reprisals, and by promises of benefits, all with the intent of undermining employee support of the Union. The Company says that it is not responsible for its supervisors' anti-union activity because the supervisors were directed by a superior not to make any promises or threats relating to union activity. The record shows that the promises and threats were made both before and after the directions from the superior. In the situation presented supervisory status is sufficient to charge the employer with responsibility. See Furr's, Inc. v. National Labor Relations Board, 10 Cir., 381 F.2d 562, 566, cert. denied 389 U.S. 840, 88 S.Ct. 70, 19 L.Ed.2d 105. The argument that it is improbable that the supervisors would violate the order of a superior goes to the weight of the testimony. We accept the findings of the Examiner.

■ The Company says that predictions of what supervisors reasonably be-

lieve would be likely consequences of unionism are protected speech. See § 8(c) of the Act. In National Labor Relations Board v. Gissel Packing Co., 395 U.S. 575, 618–619, 89 S.Ct. 1918, 23 L.Ed.2d 547, the Court distinguished between statements of what an employer reasonably believes will be the likely economic consequences of unionization beyond his control and threats of reprisals to be taken on the employer's own volition. In our opinion the statements relating to plant removal, more pay without the Union, reduced hours, welder certification, and discharge of deadbeats come within the second category and are not protected.

■ The Company argues that the statements were not improper because none of the complaining employees discontinued union activities. We are not persuaded. Statements in violation of the Act do not become permissible because they fail to dissuade some of the employees from union adherence. Something happened between March 7 and March 29 to change the minds of several who had signed authorization cards. It is reasonable to infer that company conduct which failed to deter strong union adherents did affect other employees.

■ Credible evidence that company supervisors acted to dissipate union support "by threats of reprisal and promises of benefits together with interrogation in a context coercive in nature" suffices to sustain a § 8(a) (1) violation. National Labor Relations Board v. Merrill, 10 Cir., 388 F.2d 514, 517; see also American Sanitary Products Co. v. National Labor Relations Board, 10 Cir., 382 F.2d 53, 55, and Betts Baking Co. v. National Labor Relations Board, 10 Cir., 380 F.2d 199, 201. Upon our examination of the entire record we are convinced that the Examiner's findings adopted by the Board are supported by substantial evidence and must be accepted by us. See Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456.

■ The Company attacks the Board's decision that the Union had an uncoerced majority on March 7, 1966. The Examiner found that three employees were coerced into signing authorization cards but that only one of the three cards was included in the 30 mailed to the Company on March 7; and even though that card was not among the 26 introduced in the first hearing, he took coercion into account by reducing the card count from 26 to 25. The Company charges that this is playing a numbers game. We are not persuaded. The Examiner, in addition to finding that the Union had a technical majority, concluded that the evidence had established no pattern of threats, coercion or intimidation. This conclusion has substantial support in the record.

The Company insists that even if the Board's conclusions about Company and Union conduct are separately acceptable, their juxtaposition evidences inconsistency in treatment. We are not impressed. When the record is viewed as a whole, it does not disclose inconsistency by the Examiner in his evaluation of the coercive effect of statements by company representatives on the one hand and union adherents on the other.

■ The Company argues that in any event the remedy should be a rerun election rather than a bargaining order. The Company points out that after the election was lost by the Union, 30 of the 36 members of the unit signed a petition saying that they did not wish the Union to represent them as bargaining agent. This action came nearly a month after the Union had submitted cards showing that a substantial majority favored representation by the Union. The Board has authority to issue a bargaining order "without first requiring the union to show that it has been able to maintain its majority status" even though it is clear that a union which once held cards from a majority "represents only a minority when the bargaining order is entered." National Labor Relations Board v. Gissel Packing Co.,

395 U.S. 575, 610, 89 S.Ct. 1918, 1938, 23 L.Ed.2d 547, and cases there cited; see also National Labor Relations Board v. Merrill, 10 Cir., 414 F.2d 1323, and National Labor Relations Board v. Groendyke Transport, Inc., 10 Cir., 417 F.2d 33, opinion filed September 11, 1969.

■ It may be that a refusal to bargain upon a showing of a card majority is not a § 8(a) (5) violation regardless of motivation. Cf. Gissel, 395 U.S. 575, 594, 600, and 608, 89 S.Ct. 1918. The Board can consider an employer's unfair labor practices in the light of their effect on election conditions and if it finds that there is slight possibility of ensuring a fair rerun election because of past conduct and that a bargaining order is the better protection, it may issue such an order. Id. at 614–615, 89 S.Ct. 1918. In the case at bar the Board found that the employer's violations of § 8(a) (1) were intended to prevent the selection of a bargaining representative and, in fact, "did prevent a fair election."

■ We believe that the matter of disposition of the case is controlled by Gissel. That decision disposed of four cases, one of which was Sinclair Co. v. National Labor Relations Board. In that case the First Circuit had left undisturbed a Board finding that employer threats were so coercive that, even absent a § 8(a) (5) violation, "a bargaining order would have been necessary to repair the unlawful effect of those threats." Gissel, 395 U.S. 575, 615, 89 S.Ct. 1918, 1940–1941; see also National Labor Relations Board v. Sinclair Company, 1 Cir., 397 F.2d 157. The case at bar comes within the pattern of Sinclair. See Retail Store Employees Union Local 880 v. National Labor Relations Board, 135 U.S.App.D.C. ——, 419 F.2d 329, decided July 10, 1969. In our opinion the Board did not abuse its discretion in entering a bargaining order as part of the remedy for the § 8(a) (1) violations.

The petition for enforcement is granted.