**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GOLD SPOT DAIRY, INC., Respondent.**

**No. 96–69.**

United States Court of Appeals
Tenth Circuit.

Oct. 31, 1969.

Herman M. Levy, Atty., N. L. R. B., (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel and Lawrence I. Kipperman, Atty., N. L. R. B., with him on the brief) for petitioner.

Stephen Jones, Enid, Okl., of counsel; Otjen & Carter, Frank Carter, Enid, Okl., with him on the brief, for respondent.

Before MURRAH, Chief Judge, LEWIS and HILL, Circuit Judges.

MURRAH, Chief Judge.

In this proceeding to enforce a conventional order of the National Labor Relations Board, the Board found that respondent violated Section 8(a) (1), 29 U.S.C. Section 158(a) (1), by coercively interrogating employees concerning union activities, threatening employees and engaging in surveillance of a union meeting. The Board adopted the findings of the trial examiner in their entirety.

■ Respondent asserts that there is no substantial evidence to support the Board's findings; and if so, the incidents in question are not violations of Section 8(a) (1); but if so, they are so minor as to be de minimus. We do not review the alleged coercive and threatening interrogation of Koehn by Thomas, since respondent did not except to that portion of the trial examiner's decision. N. L. R. B. v. Midwestern Manufacturing Company, 388 F.2d 251 (10th Cir.). As to the remaining portions of the order, we enforce in part and decline to enforce in part.

■■ As in so many areas of labor law, the cases are legion and "to be properly juxtaposed each must be analyzed in terms of its own peculiar facts." Betts Baking Co., Inc. v. N. L. R. B., 380 F.2d 199 (10th Cir.). Decisions which reach seemingly contradictory results on similar factual situations may often be reconciled when it is realized that the seeming contradiction involves nothing more than the drawing of different, but equally permissible, inferences from credible testimony.

The similarity of the cases lies not in comparable fact situations but in the basic issue that each case involving a Section 8(a) (1) violation presents. And that issue must be whether the act in question was coercive, threatening or restraining in nature for therein lies the core of the unfair labor practice. N. L. R. B. v. Thompson Transport Company, Inc., 406 F.2d 698 (10th Cir.). Without the element of coercion, threat or restraint, statements or interrogations are not illegal per se. N. L. R. B. v. Automotive Controls Corporation, 406 F.2d 221 (10th Cir.); N. L. R. B. v. Seamprufe, Inc., 382 F.2d 820 (10th Cir.).

■■ The attribution to conduct of a proscribed element necessarily involves an exercise of judgment and is a matter initially for the Board. In making that determination, it is the peculiar province of the Board to draw permissible inferences from credible testimony. American Sanitary Products Co. v. N. L. R. B., 382 F.2d 53 (10th Cir.); Love Box Co., Inc. v. N. L. R. B., 412 F.2d 946 (10th Cir.); N. L. R. B. v. Wylie Manufacturing Company, 417 F.2d 192 (10th Cir.), opinion filed October 17, 1969.

■ Our inquiry then is whether the trial examiner exercised his judgment in an informed and rational manner in reliance on credible testimony. Credibility determinations are within the Board's province, not the court's, and are ordinarily entitled to affirmance on appellate

review. N. L. R. B. v. Wylie Manufacturing Company, supra. We have read the record in its entirety and find no basis for disturbing the credibility determination.

■ The trial examiner credited testimony that Thomas (an admitted supervisor) said to Moyer that he, Thomas, had heard that Moyer had been going to a few union meetings; that Moyer acknowledged he had; that Thomas asked how Moyer felt about the union; that Moyer replied something should be done about the wages, but he did not want any bad feelings between Thomas and him; that Thomas then informed him to "Sort of limit your meetings." This latter statement was found to be burdened with the implication that failure to limit attendance at union meetings would be disadvantageous and constituted a subtle form of coercion.

■ The trial examiner also found that on March 3, 1967, Beachboard (an admitted supervisor) told employee Taylor to stop talking and visiting in the plant and to start doing something useful while on the job, indicating at the same time he did not care whether the union came into the plant or not. Again, on March 7, 1967, Beachboard told Taylor that he was making him (Beachboard) look awfully small, that some sales personnel had seen Taylor come out of the garage the night before, that there was suspicion Taylor was "talking union to [other employees] ", that as long as Taylor was off the time clock to stay off company property and not be around talking union and that he should tell the union people "to take it and cram it, that I was getting enough." The trial examiner determined that the conversations were rooted in respondent's preoccupation with Taylor's union activity and opposition to the union; that Beachboard's criticism of Taylor, emphasized

as it was on the second occasion by Beachboard's expression of strong displeasure with Taylor's union activity, constituted coercive conduct in violation of Section 8(a) (1). The trial examiner's conclusion that Thomas' and Beachboard's conduct was violative of Section 8(a) (1) was permissible from the credited testimony. And our inquiry thus ends. American Sanitary Products Co. v. N. L. R. B., supra; N. L. R. B. v. Wylie Manufacturing Company, supra.

■ Finally, the trial examiner found that Thomas followed Koehn by car into the parking lot of the Holiday Inn on March 6. And that Thomas was engaging in surveillance of the union meeting in violation of Section 8(a) (1) at the time when Koehn arrived. Drawing all reasonable inferences from the credited testimony in favor of the Board, we are still unable to sustain the finding of surveillance. In the first place, Koehn did not testify that Thomas followed him into the parking lot.[1] In addition, Koehn testified that he did not know what Thomas did after he saw him in the parking lot, that he did not know whether he stayed there and that he was not sure whether Thomas was watching him or not. The mere fact that Thomas drove into the parking lot, even under suspicious circumstances, is insufficient to sustain the finding of surveillance. This is so even though we uphold the Board's findings as to the other Section 8(a) (1) violations. When viewed in its entirety, the record "clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474 at 490, 71 S.Ct. 456 at 466, 95 L.Ed. 456 (1951).

1. Koehn's sole testimony in that regard was as follows:

"Q. You don't know whether he was following you or not, do you?"

"A. I don't see how he could miss." Giving this ambiguous reply the most liberal construction possible, we do not see how it becomes testimony that Thomas was following Koehn.

Even though the unfair labor practices were not numerically great, the Act was violated. And it is the function of the Board, not the judiciary, to determine how the effect of an unfair labor practice may be expunged. Furr's Inc., v. N. L. R. B., 381 F.2d 562 (10th Cir.), cert. denied 389 U.S. 840, 88 S.Ct. 70, 19 L.Ed.2d 105; N. L. R. B. v. King Radio Corporation, Inc., 416 F.2d 569 (10th Cir.). On the record before us, we cannot say that violations were so minuscule as to justify the imposition of no remedial measures.

The words, "Engaging in surveillance of lawful union or organizational activities.", will be deleted from the order, and the words, "We Will Not engage in spying upon your lawful union or organizational activities" will be deleted from the notice. As thus modified, the Board's order will be enforced.

Enforcement granted in part and denied in part.