NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

GLENN BERRY MANUFACTURERS, INC., Respondent.

No. 225–69.

United States Court of Appeals
Tenth Circuit.

Jan. 21, 1970.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, John I. Taylor, and Ian D. Lanoff, Attys., N.L.R.B., for petitioner.

Ben T. Owens and Melvin H. Landers of the firm Wallace & Owens, Miami, Okl., for respondent.

Before HICKEY and HOLLOWAY, Circuit Judges, and EUBANKS, District Judge.

EUBANKS, District Judge.

This is a proceeding to enforce a decision and order of the National Labor Relations Board finding Glenn Berry Manufacturers, Inc., guilty of violating Section 8(a) (3) and (1) of the Act by discharging Dorothy Green for discriminatory reasons.

After the complaint charging violation was filed Trial Examiner, Milton Janus, conducted extensive hearings on June 1 and 2, 1967, and thereafter said examiner made exhaustive Findings of Fact and Conclusions of Law on October 24, 1967, wherein, among other things, he recommended that Respondent:

> Offer to Dorothy Green immediate and full reinstatement of her former or substantially equivalent position, without prejudice to her seniority or other rights or privileges, and make her whole for any loss of earnings she may have suffered by reason of the discrimination against her, in the manner set forth in the section of this Decision entitled "The Remedy."

Thereafter and on February 14, 1968, the National Labor Relations Board upon consideration of the record made at the hearing before the Trial Examiner adopted the Findings, Conclusions and Recommendations of the Trial Examiner.

In determining whether we should decree enforcement of said order we are mandated by Universal Camera v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, and N.L.R.B. v. Wylie Manufacturing Company, 417 F.2d 192 (10th Cir. 1969) to carefully examine the entire record so as to ascertain whether the finding and order is supported by substantial evidence. If so, we must order enforcement. Further, we observe that the question of the credibility of the findings are peculiarly within the province of the examiner and the board and are ordinarily entitled to affirmance on review. See American Sanitary Products Co. v. N.L.R.B., 382 F.2d 53, 55 (10th Cir.) and N.L.R.B. v. United Nuclear Corp., 381 F.2d 972 (10th Cir.) and N.L.R.B. v. Wylie, supra.

Respondent, Glenn Berry Manufacturers, Inc., has its principal place of business in Commerce, Oklahoma, and operates two plants manufacturing mens pants at Commerce, Oklahoma, and at Oswego, Kansas. The women employees at both plants were represented by separate locals of the United Garment Workers of America. The International representative serving both unions was one Earl Carroll. Apparently good relations existed between the union and the Respondent at all times herein pertinent. In January 1967 the existing bargaining agreements were reopened by mutual consent because of the recently enacted

Federal Wage and Hour Law although the existing contract had sometime to run. Bargaining committees of the two locals with the assistance of Carroll engaged in negotiations with company officials and a tentative agreement was reached between the committees and the company but when this tentative agreement was submitted to the employees for ratification it was rejected. This occurred in January 1967. The parties then resumed bargaining and a second agreement was reached which was submitted to and ratified by the employees on February 8, 1967. During the negotiations employee Dorothy Green became dissatisfied with the assistance Carroll was rendering and commenced circulating a petition calling for the discharge of International Representative Carroll. Dorothy Green had talked to her union president, Martha Lawrence, before she started circulating the petition and had obtained the suggestion and approval of such procedure from Martha Lawrence who also was an employee of Respondent. It is hotly disputed between parties as to when management learned that Green was circulating a petition trying to get Carroll fired, but in any event it is not disputed that management knew she was circulating a petition. The activity by Green in connection with the petition had occurred during the period prior to and including the date of February 8, 1967. On the morning of Saturday, February 11, 1967, a non-working day, local union president, Martha Lawrence, went to the office of Mr. Heydt and told him of the activities of employee Green in circulating the petition. While Mrs. Lawrence insists that she did not tell Heydt of the contents of the petition and Mr. Heydt contends he did not know the purpose of same all of the evidence militates against these contentions because as heretofore noted President Lawrence had even suggested the petition in the first instance to employee Green. At this Saturday morning conference Edward Morris, Plant Manager, was present and he also had known of the activities of employee Green during the pre-

ceding period but he too says that he had not seen the petition and did not know of its contents. When Mr. Heydt was asked if he considered it unusual that the union president should complain to him about the activities of one of the employees he said: "No, because we have rather cordial relations with our whole union set-up, and anything that is a problem for the company is a problem for the union, and anything that's a problem for the union is a problem for the company."

On Monday, February 13th, Green was called into the office of President, Francis E. Heydt, and was told that she had violated the Rules of Conduct Nos. 7 and 14 promulgated by the company and also was informed she had violated Section 3 of the Agreement between Glenn Berry Manufacturers, Inc., and United Garment Workers of America, Local 427. At this conference Green was asked to resign and upon her refusal to do so was fired. It is not contended by anyone that Green's work had been unsatisfactory except that Respondent does say that by her distracting talk and petition circulating she had helped cause production to slow down.

The provisions claimed by Respondent to have been violated by Green are as follows:

7. EXCESSIVE TALKING—Excessive talking during work periods is disturbing to others and will not be tolerated. Nor will improper attitude toward other employees or the spreading of rumors that are untrue and affect the morale of the plant be tolerated. *Guard your talk when discussing others!*

14. Any incident of actual physical violence or threatened physical violence or intimidation of any sort by an employee or group of employees toward any other employee will not be tolerated. If proven to management beyond reasonable doubt by reliable witnesses that such incident or act has occurred, regardless of circumstances, the person striking the first blow and/or the person or persons making

or causing to be made any threat of violence or intimidation by any untruthful statement or statements causing damaging character assassination so as to promote disturbance, unrest or confusion in the plant *will be discharged immediately.*

Section No. 3. DISCRIMINATION The Company and the Union will at all times use their best efforts to promote and maintain friendly and harmonious relations. The Company will not countenance any discrimination against or interference with the Union and its members in the conduct of the Union's lawful activities, by any employee or any agent of the Company; however, Union activities shall not be carried on by the employees in the plant during working hours, except as hereinafter provided.

The Respondent contends that Green had violated the foregoing in that she had endeavored to obtain signatures on her petition during work periods. The record shows that in one or two cases Green did talk to co-workers during working times about her petition but the examiner found, and his findings are amply supported by the proof, that her efforts to obtain signatures while on the job were minimal and not distracting. The examiner also found that the slow down in production could not be attributed to Green. The Petitioner contends that employee Green was really discharged for conducting a union activity which is protected and was not fired for violating regulations.

The evidence disclosed that usually when an employee of Respondent was thought to be violating rules she would be warned. The evidence further shows that on occasions other employees had, during work hours, taken orders for Stanley, Avon and Tupperware products without being warned or fired.

 The law is settled in this circuit that an employer having the right to discharge employees for an unprotected activity may not discharge them for discriminatory reason without violating the National Labor Relations Act. See N. L. R. B. v. Coal Creek Coal Company, 10 Cir., 204 F.2d 579. The failure of Respondent to reprimand Green prior to her discharge constituted a departure from its normal practice and supports the finding that the motivating factors behind her discharge were those prohibited by Section 8(a) (3) of the Act. See Brewers and Maltsters Local Union No. 6 v. N. L. R. B., 8 Cir., 301 F.2d 216; N. L. R. B. v. Bama Company, 5 Cir., 353 F.2d 320; N. L. R. B. v. Dan River Mills, 5 Cir., 274 F.2d 381. Recently this very court considered a similar factual situation in N. L. R. B. v. Automotive Controls Corp., 10 Cir., 406 F.2d 221 and citing Cain's Coffee Company v. N. L. R. B., 10 Cir., 404 F.2d 1172, the Court said:

"The discharge of employees who are actively engaged in union affairs may give rise to an inference of violative discrimination."

In Betts Baking Company v. N. L. R. B., 10 Cir., 380 F.2d 199, Chief Judge Murrah speaking for this Court said:

"Rarely, if ever, does an employer admit that an employee has been discharged for participation in union activities. Discrimination must therefore, usually be proved by circumstantial evidence, and properly so."

Although Respondent says that to find discrimination or unlawful termination we must put an inference upon an inference, we do not agree. A fact may be established as surely by presumptions which naturally and logically flow from a chain of events and circumstances as by positive direct proof. Moffitt v. United States, 10 Cir., 154 F.2d 402, cert. denied, 328 U.S. 853, 66 S.Ct. 1343, 90 L.Ed. 1625, and United States v. Eagleston, 417 F.2d 11 (CA 10, October 17, 1969).

After a careful review of the entire record we are persuaded that the findings and order of the Trial Examiner and the Board are fully supported by the evidence and accordingly it is ordered that the Order of the Board will be enforced.