**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GERBES SUPER MARKETS, INC., Respondent.**

**No. 20267.**

United States Court of Appeals, Eighth Circuit.

Jan. 18, 1971.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, William Wachter, Roger L. Sabo, Stephen Solomon, Attys., N.L.R.B., Washington, D. C., for petitioner.

Eidson, Lewis, Porter & Haynes by William G. Haynes, Topeka, Kan., for respondent.

Before VAN OOSTERHOUT and HEANEY, Circuit Judges, and HANSON, District Judge.

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this Court for the enforcement of an order issued against Gerbes Super Markets, Inc. The Board found that Gerbes had violated § 8(a) (1), (3) and (5) of the National Labor Relations Act, 29 U.S.C. § 151, et seq. The Board ordered Gerbes to reinstate one employee, to bargain with the Meat Cutters' Union with respect to the employees of the Meat Department in its Columbia, Missouri, store, and to post appropriate notices. The Board's decision and order are reported at 176 N.L. R.B. No. 1, 71 L.R.R.M. 1181 (1969).

Gerbes argues: (1) that the manager of the Meat Department, Bill Phillippe, who was found by the Board to have restrained and coerced employees in violation of the Act, was not a supervisory employee of the company as defined by § 2(11) of the Act and that the company was, therefore, not responsible for his activities; (2) that there is not substantial evidence in the record as a whole to support the Board's finding that supervisors or agents of the company coerced or restrained employees in violation of § 8(a) (1) of the Act; (3) that Nolan Tritschler was not discharged or otherwise discriminated against because of his protected union activities; (4) that the bargaining order was not proper because the unit for which the union requested recognition was an inappropriate one, and because the signatures of the employees to the authorization cards were obtained at a time when employees generally were being told they would have to join the union or lose their jobs; and (5) that the character of the unfair labor practices, if there were any, was not such as to permit the Board to issue a bargaining order.

We have carefully reviewed the record and we enforce the Board's order.

We consider the employer's contentions seriatim.

### (1) *Phillippe's employment status.*

Substantial evidence in the record supports the Board's finding that Phillippe was a supervisory employee within the meaning of the Act. Its determination also has a reasonable basis in law. See, N.L.R.B. v. Little Rock Downtowner, Inc., 414 F.2d 1084 (8th Cir. 1969). Phillippe was the manager of the Meat Department of the Columbia store. As manager, he "pretty well [ran] the meat shop." He set employee work schedules, gave them their work assignments and effectively recommended the employment of many of the employees in his department. While he exercised each of these duties within reasonably defined limits, it is clear that he placed a primary role in the hiring process. He effectively recommended the hiring of at least three of six em-

ployees in the department, Larry Nelson, Gary Foley and David Owen, and played a part in the hiring of a fourth employee, Lequeta Joy Carlos. It is equally clear that he exercised considerable independent judgment in assigning and directing employees.

(2) *The sufficiency of the evidence to support the Board's findings of violations of § 8(a) (1) of the Act.*

■ A careful review of the evidence has convinced us that Gerbes committed a series of unfair labor practices.

In early January of 1969, Nolan Tritschler, an employee of Gerbes, discussed the question of unionizing the store with a number of fellow employees. When they showed an interest, Tritschler contacted a representative of the Retail Clerks' Union who agreed to meet with the employees. Tritschler communicated this fact to some of his fellow employees. A few days thereafter, the store manager told Tritschler that he had recommended him to the home office for a wage increase of ten cents per hour. This was in addition to a similar increase received a short time earlier. The manager also stated that the company knew Tritschler had met with union representatives.

The Board found, and properly so in our opinion, (1) that the latter statement was calculated to give Tritschler the impression that his union activities were under surveillance, and (2) that the promise of a wage increase was designed to induce Tritschler to reject the union. See, McGraw-Edison Co. v. N.L.R.B., 419 F.2d 67 (8th Cir. 1969); N.L.R.B. v. Ralph Printing and Lithographing Company, 379 F.2d 687 (8th Cir. 1967).

Gerbes argues that the Board took the statement out of context and that the wage increase had been recommended weeks before it was given. We do not agree with either argument. We particularly note that the promise of the second wage increase, whenever it may have been recommended, was timed to coincide with the warning to Tritschler that he was under surveillance. It is also significant to note that other employees were granted additional wage increases which had been under consideration for at least a month and one-half.

There is also substantial evidence in the record as a whole to support the Board's findings of numerous other § 8(a) (1) violations. Phillippe questioned various employees about union meetings. He also called two employees, Foley and Owen, into the meat cooler and told them the company might have to close the store because it couldn't afford to pay union wages; and that if a union did come in, they would be replaced by apprentice meat cutters. Phillippe also told Foley not to sign a union authorization card and subsequently asked him to withdraw the one he had signed. Phillippe's statements were not neutralized by a notice on the bulletin board to the effect that only the store manager had authority to speak for the company:

" * * * Statements of neutrality, couched in general language, without reference to, or repudiation of prior unlawful conduct of the employer's supervisory personnel do not erase such prior unlawful conduct."

A. P. Green Fire Brick Company v. N. L.R.B., 326 F.2d 910, 914 (8th Cir. 1964).

The store manager's wife and a vocational teacher, who instructed two of the employees, were also properly found by the Board to have made coercive remarks on behalf of the company. See, McGraw-Edison Co. v. N.L.R.B., *supra*; N.L.R.B. v. Arkansas-Louisiana Gas Company, 333 F.2d 790 (8th Cir. 1964).

(3) *Nolan Tritschler's discharge.*

■ There is ample evidence to support the Board's finding that the Company, because of its increasing disenchantment with Tritschler's efforts on behalf of the union, changed his day off from Saturday to Wednesday.

Tritschler was discharged after the union filed unfair labor practice charges

and because Tritschler refused to surrender a five-page summary of an oral statement he had given to the company attorney. The attorney had written up the statement and handed it to Tritschler to read and sign. Tritschler refused to return the statement unless he was given a copy or a written promise that he would receive a copy. The company refused, saying only that it would mail a copy to Tritschler. An argument developed. Tritschler was informed that his retention of the statement was an act of insubordination for which he would be discharged unless he returned the statement. Tritschler refused and was subsequently fired.

The Board held that Tritschler's discharge violated the Act and ordered his reinstatement. We affirm. Under the circumstances of this case, it was reasonable for Tritschler to qualify his cooperation on the condition that he be furnished with a copy of the statement recorded by the employer. See, N.L.R.B. v. Great Atlantic and Pacific Tea Company, 409 F.2d 296, 299 (5th Cir. 1969); N.L.R.B. v. Neuhoff Bros., Packers, Inc., 375 F.2d 372, 376–378 (5th Cir. 1967). Thus, his discharge was violative of § 8(a) (1) of the Act.

(4) *The propriety of the bargaining order.*

The union obtained valid authorization cards from five of the six non-supervisory employees in the Meat Department. There is no evidence in the record to indicate that any of the employees of the Meat Department were told that "they may as well sign the cards now because after the union came in they would have to become a union member." Indeed, the evidence is clear that the Meat Department employees signed the cards at or immediately after a meeting conducted by a representative of the Meat Cutters' Union. It is also clear that no misrepresentations were made at that meeting, and there is no evidence in the record indicating that misrepresentations were made at any other time to these employees.

A unit consisting of the employees of the Meat Department was found by the Board to be an appropriate one. We find no abuse of discretion in this finding. N.L.R.B. v. William J. Burns Internat'l Detective Agency, Inc., 346 F.2d 897 (8th Cir. 1965); N.L.R.B. v. Hurley Company, 310 F.2d 158 (8th Cir. 1962). The department is physically separated from the rest of the store, it has a separate manager, the skills of the employees differ from those of the other employees in the store and there is no history of prior bargaining. Furthermore, Meat Department employees have rather consistently been found to be an appropriate unit. See, *e.g.,* Hy-Vee Food Stores, Inc. v. N.L.R.B., 426 F.2d 763 (8th Cir. 1970).

Finally, we are convinced, for the reasons enunciated by the Board and on the authority of N.L.R.B. v. Gissel Packing Company, 395 U.S. 575, 613–616, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969) and Hy-Vee Food Stores, Inc. v. N.L.R.B., *supra,* that the order requiring the petitioner to recognize and bargain with the union is proper.

We have considered and we reject each of the employer's remaining contentions. Enforcement of the Board's order is granted.