NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DOVER CORPORATION, NORRIS
DIVISION, Respondent.

No. 74–1577.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 19, 1975.

Decided April 12, 1976.

Rehearing Denied May 14, 1976.

Elinor Hadley Stillman, Atty., N. L. R. B., Washington, D. C. (William Watcher, Atty., N. L. R. B., and Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for petitioner.

Mary T. Matthies, Tulsa, Okl. (Richard L. Barnes, of Kothe & Nichols, Inc., Tulsa, Okl., on the brief), for respondent.

Before HILL, HOLLOWAY and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

The National Labor Relations Board applies for enforcement of that part of its order entered in Dover Corporation, Norris Division, 211 NLRB No. 98, finding that the Dover Corporation violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a)(1), and entering an order to cease and desist and to post a notice, *inter alia*.[1]

The Board found that Dover violated § 8(a)(1) by virtue of the threatening statements of a supervisor, Rike, during an organizational campaign and issued a remedial order. In opposing enforcement of the order Dover essentially argues that (1) there is insufficient evidence to establish that coercive statements were made; (2) there is insufficient evidence to establish that the employees considered the statements to be authorized by top management or capable of being carried out by the supervisor, Rike, who allegedly made the statements; (3) there is no evidence to support a finding that employees were restrained in the exercise of protected activities by the alleged statements; (4) the Board has failed to establish an ascertainable standard by which an employer can remedy unauthorized misconduct; and (5) the order of the Board is not appropriate for present enforcement. We will first outline the facts in our record pertaining to the § 8(a)(1) charge and then address the principal arguments made.

In May, 1973[2] the United Steelworkers of America began an organizing campaign at Dover's Rockford Street plant, in Tulsa, Oklahoma. At that time Rike was foreman of inspection supervising three inspectors at the plant.[3] On July 13, Rike approached employee Thompson and engaged him in a discussion, comparing the employee benefits

1. The order also concerned charges filed by Dover against the union involved in this case, United Steelworkers of America, for violation of § 8(b)(1) and 8(b)(4). Since the Board received voluntary compliance by the union as to the part of the order dealing with the only unfair labor practices by the union found to have occurred, in violation of § 8(b)(1), we are concerned here only with the findings pertaining to employer practices.

2. All dates hereafter refer to 1973, unless otherwise noted.

3. The status of Rike as a supervisor within the meaning of the Act was admitted in Dover's answer to the complaint (A. 50–52).

of the Rockford Street plant with the benefits of the Norris plant, another Dover Facility which was previously unionized. Rike, holding a document purporting to be a Norris contract book, said to Thompson that he didn't see "why you guys want a union in here, because you have better benefits and wages than the Norris plant does." Apparently the contract book which Rike showed Thompson was an old contract which had expired. Later that day Thompson told Rike that he and other employees objected to Rike's using the old contract. Rike was said to have replied, "If you guys are going to play this way, I have enough on the five of you to get you discharged for union activities." Rike denies having this second conversation with Thompson, but the Judge credited Thompson's version (A. 17, 19).

Shortly after this incident Mr. Bechtold, a Vice-President of Dover, learned that several employees felt they had been threatened with reprisals for union activity. He directed Dover's attorney to contact the employees and to investigate the matter. On July 20, the Assistant Plant Superintendent and the company attorney spoke with several employees, including Thompson, and assured them that any threats were not the doing of the company; that the company would take action on this matter if it were true; and they assured the employees that they had a right to organize and could not be interfered with for trying to organize, nor could they be fired from the company. Apparently neither Rike nor the prior incident were specifically mentioned during this conversation. On the same day, July 20, the company posted a notice in the plant, which read (A. 55–56):

### NOTICE TO EMPLOYEES

There seems to have been some question recently as to who is a supervisor in the plant and who is an employee. As many of you who have been here during past union campaigns will remember, persons who are supervisors are somewhat limited in what they can say about unions.

Supervisors are forbidden by the law to make any promises as to future rewards in order to get an employee to decide to join or not to join a union. They are also forbidden to threaten or harass any employee who campaigns either for or against a union.

Our supervisors in the plant, who are named below, have been informed that they are not to interfere with the rights of our employees to campaign either for or against unions. This does not mean that these supervisors cannot enforce our rules that all campaigning should be done on non-working time.

Our plant supervisors are:  W. A. Rike
G. T. Boyce
F. R. Hawkins
B. L. Uto
W. H. Mitchell
G. W. Sullivan

Leadmen are not considered by this company to be supervisors. While they are among our most valuable employees because of their experience in the way we work here at O'Bannon, they are *not* foremen.

Leadmen do not have the authority to hire any employees, or to transfer, suspend, lay off or recall any of their fellow workers. Leadmen cannot discharge, reward or discipline employees, nor may they make independent decisions as to work assignments of any other employees.

Therefore, any statements made by any leadmen either for or against unions are their own opinions. The only people who can make statements on behalf of the company are the supervisors named above.

I hope this notice will make these matters clear. If you have any questions, please come to your supervisor or to me.

/s/ E. L. Bechtold
E. L. Bechtold

ELB:ja

Thompson testified that assurances had been given him by Dover's attorney, with the assistant plant superintendent, Uto, present. Thompson agreed he was told they "were there to assure [him] that there

would be no reprisals against [him] for engaging in union activity . . . ." Thompson continued his union activity and was still working at the plant at the time of the hearing (A. 93–94).

Employee Curry testified that Rike approached him on August 8 at Curry's work station and told him "that the people who were pushing the union, working for the union, would probably be fired if the union failed to get in." Rike admitted having a conversation with Curry sometime in early August, but expressly denied that he ever told Curry that the people working for the Union would be fired. The Administrative Law Judge credited Curry's testimony (A. 6, 19). Curry testified that he had read the posted notice and, when asked if he believed it, he replied that he ". . . had no reason to disbelieve it . . . ." (A. 80).

Essentially the Judge found that Rike did tell three union supporters they would be discharged;[4] that while he was talking in a friendly manner and on the basis of his long union background and relationship with them, he was found to have made the remarks, which violated § 8(a)(1) (A. 19). He also found that Dover's attorney had met with approximately five employees and gave assurances that threats were no "doing of the company" and that "they had a right to organize and could not be interfered with for trying to organize, could not be fired from the company for this." (A. 14). He nevertheless found an 8(a)(1) violation and recommended a remedial order.

The Board, with Chairman Miller dissenting, agreed with the finding that the conversations between Rike, and Curry and Thompson were violative of § 8(a)(1). The Board rejected as unsupported the finding of an additional similar incident with employee Waid. Chairman Miller pointed to the notices and assurances and said he could not infer that the employees would assume Rike was speaking for the company or in a position to carry out the threats he made, and would not hold the company responsible for the minor supervisor's remarks, outside his apparent authority (A. 40).

The Board majority found, however, that Rike's authority was such that it was not difficult to understand why employees might well be apprehensive about arousing his enmity and that the supposed attempt to counteract Rike's statements were "little more than some general bromides by the Company's counsel about the Company's good aims and intentions." (A. 41). The majority found a violation of § 8(a)(1) and a remedial order was entered.

## I

### The § 8(a)(1) Violations

If made as the Judge found, we agree that the statements by Supervisor Rike are coercive and threatening and sufficient under the decisions in *Serv-Air, Inc. v. NLRB*, 395 F.2d 557, 565 (10th Cir.), cert. denied, 393 U.S. 840, 89 S.Ct. 121, 21 L.Ed.2d 112 and *Betts Baking Co. v. NLRB*, 380 F.2d 199, 201–02 (10th Cir.) to sustain a finding of § 8(a)(1) violation. For several reasons Dover argues that substantial evidence does not support the Board's findings.

*First*, Dover says that the credibility findings made by the Judge and sustained by the Board should be overturned, pointing to several circumstances undermining the findings. We are not persuaded. Credibility findings are peculiarly within the province of the hearing officer and the Board and are ordinarily entitled to acceptance on review. *N. L. R. B. v. Wylie Mfg. Co.*, 417 F.2d 192, 194 (10th Cir.), cert. denied, 397 U.S. 913, 90 S.Ct. 915, 25 L.Ed.2d 94. Dover argues for an exception to this rule, emphasizing that the Administrative Law Judge should not have credited Thompson and Curry as to occurrence of the threatening incidents since the Judge did not credit their testimony as it per-

---

**4.** As noted below, the Board majority accepted the findings of violations as to only two employees—Curry and Thompson. They rejected as unsupported the Judge's finding of a viola-

tion as to employee Waid, pointing out that there was no probative evidence to support that finding.

tained to the unfair practices charged against the union (see n. 1, supra). We disagree. The Judge could credit some testimony of a witness although he disbelieved other testimony from the same witness. See *Wylie*, supra, 417 F.2d at 194.

Dover also says that the credibility of Rike is strengthened by the proof that he had previously received detailed instructions on labor relations which taught him that supervisors could not interfere with employees during union organizing campaigns (Brief for Dover Corp., 11–12). The argument that it is improbable that a supervisor would violate the orders of his superiors goes to the weight of his testimony. See *Wylie*, supra, 417 F.2d at 194. It was for the Judge and then the Board to weigh the testimony. Accordingly, we sustain the findings resolving the conflicts in the proof.

*Second*, Dover argues that there was insufficient evidence that the employees considered Rike's statements to be authorized by top management or capable of being carried out by Rike (Brief for Dover Corp., 13–20). Dover is not arguing that Rike is not a statutory supervisor within the meaning of § 2(11) of the Act, 29 U.S.C.A. § 152(11), which it admits.[5] Rather, Dover says that Rike did not have the authority to fire either Thompson or Curry and that he had no direct supervision over their work so that therefore there would be no reason for Thompson or Curry to view any statement by Rike as threatening or intimidating. Furthermore, Dover argues that any coercion or intimidation caused by Rike's statements was negated by the oral assurances against reprisal given to several employees on July 13 and the written notice of July 20. These were points made by Chairman Miller in dissent.

Deciding whether particular statements amount to threats or coercion involves an exercise of judgment and is a matter initially for the Board. In making that determination it is the peculiar province of the Board to draw permissible inferences from credible testimony. *N. L. R. B. v. Gold Spot Dairy, Inc.*, 417 F.2d 761, 762 (10th Cir.). That a supervisor lacks the power to hire or fire does not preclude the Board from finding unfair labor practices attributable to the employer arising from the supervisor's conduct. See *NLRB v. Link-Belt Co.*, 311 U.S. 584, 599, 61 S.Ct. 358, 365, 85 L.Ed. 368, 378. The employer is responsible for the acts of a supervisor when employees would have just cause to believe that he was acting for and on behalf of the company. *Furr's Inc. v. NLRB*, 381 F.2d 562, 566 (10th Cir.), cert. denied, 389 U.S. 840, 88 S.Ct. 70, 19 L.Ed.2d 105.

The Administrative Law Judge specifically found that Rike had no supervisory authority over any of the company employees other than three inspectors. Nonetheless, he found the statements violative of § 8(a)(1). The Board found that Rike was not a minor supervisor and that he did have some authority over the threatened employees (A. 40). The Board noted that Curry testified that all employee work required Rike's "O.K." and that Rike did not disagree. The Board also noted that the inspectors under Rike's control could require employees to redo their work. Thus the Board concluded that employees might well be apprehensive about arousing Rike's enmity.

On this basis the Board found that the statements made by Rike were coercive and therefore violative of § 8(a)(1).[6] We accept this conclusion by the Board as supported by credible and substantial proof on which the Board could rely.

Dover argues further that any coercive effect of the statements by Rike was offset by reassurances given to all employees, either orally or through the posted notice.

---

5. As noted earlier, Dover's answer to the complaint issued by the General Counsel admitted that Rike was a statutory supervisor (A. 50–52).

6. The Board also noted that Rike was never disciplined or rebuked because of his statement (A. 41). We do not perceive the evidence in the record which led the Board to make this observation, but this lack of support does not undermine the other findings and conclusions.

The Board rejected these attempts to counteract the coercive statements as mere "general bromides" by the company about its aims and good intentions (A. 41).

We feel the characterization by the Board was not a fair one in view of the extent of the company's efforts and their apparently reassuring effect on at least Thompson and Curry. We are impressed by the fact that the oral assurances given to several employees, whose names had been furnished by the union, acknowledged reports of supervisor coercion and gave assurances that remedial action would be taken and that no reprisals or firing for union activity would occur. These statements were more specific than the general statements rejected as inadequate in other cases.[7] Nevertheless, the remarks by Rike found to have been made were strong ones and it is for the Board to assess the curative effect of the company's remedial efforts. *Furr's Inc.,* supra, at 567. We cannot say its judgment was clear error on the whole record.

*Third,* Dover argues that neither Thompson or Curry were actually deterred or coerced in their union activities; that both remain active union advocates; and that neither has suffered any reprisal on account of his organizing activities. We agree that the actual effect of the statements on the employees is relevant, but it is not dispositive. *See Boeing Airplane Co. v. NLRB,* 140 F.2d 423, 434 (10th Cir.). "Statements in violation of the Act do not become permissible because they fail to dissuade some of the employees from union adherence." *Wylie,* supra, 417 F.2d at 195.

Finally, Dover argues that the Board's findings depart from a previous Board policy announced in *Morganton Full Fashion Hosiery Co.,* 107 NLRB No. 312, where the Board found that no remedy was necessary due to a few isolated threats by overzealous minor supervisory personnel.

*Morganton* concerned alleged unfair practices in the context of a challenge to a representation election and the propriety of setting aside the election results. Dover argues that the Board is more likely to find unfair practices in a case involving an election challenge than in a case where the only issue is whether unfair practices occurred, citing *Dal Tex Optical Co.,* 137 NLRB No. 189. Hence Dover says that if isolated incidents were insufficient to amount to unfair practices in *Morganton,* the isolated instances in the present case are clearly insufficient to amount to unfair practices.

We need not go into the nuances of the rules said to apply in various situations. In the first place, we are not persuaded that the *Morganton* decision of the Board established any clear "rule" concerning orders being unnecessary where isolated incidents or only a small number of improper statements are involved. We are persuaded that the determination concerning a remedial order turns on the facts, under Board decisions and controlling court decisions. The Board must decide whether the incidents found to have occurred—few or many—amounted to unlawful coercion. Since we cannot say the Board's findings and its assessment of the need for an order were clearly in error, we uphold the Board's determinations. *Gold Spot Dairy, Inc.,* supra, 417 F.2d at 764; *A. P. Green Fire Brick Co. v. NLRB,* 326 F.2d 910, 914 (8th Cir.).

## II

### Enforcement of the Board's order

Dover objects to enforcement of the Board's order for several reasons.

*First,* Dover argues that the Board has failed to establish an ascertainable standard whereby an employer can remedy unauthorized misconduct. The complaint of lack of a hard and fast rule is not persuasive. As noted, for obvious reasons

---

7. See, *e. g., Furr's Inc.,* supra, 381 F.2d 567: see also *NLRB v. Gerbes Super Markets, Inc.,* 436 F.2d 19, 21 (8th Cir.); *United States Rubber Co. v. NLRB,* 384 F.2d 660 (5th Cir.); *N.L.*

*R.B. v. Austin Powder Co.,* 350 F.2d 973, 976 (6th Cir.); *A. P. Green Fire Brick Co. v. NLRB,* 326 F.2d 910 (8th Cir.).

the finding whether unlawful coercion occurred and the terms of any remedial order must depend on the particular factual setting, and the efficacy of notices and assurances to remedy misconduct must likewise be judged by the circumstances. See *A. P. Green Fire Brick Co. v. NLRB, supra,* 326 F.2d at 914; *NLRB v. Gerbes Super Markets, Inc., supra,* 436 F.2d at 21. We are reminded that " . . . the relation of remedy to policy is peculiarly a matter for administrative competence . . ." *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271, 1283; see also *Virginia Electric & Power Co. v. NLRB,* 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568, 1574. We cannot agree that the Board's findings and order are repugnant to policies of the Act or unsupported by the record.

■ Further, Dover contends that enforcement of the order is no longer appropriate since the Board consented to a representation election which has occurred, with certification of its results adverse to the union, and passage of time. Dover says that since the Board waived the "blocking effect" of an unfair labor practice charge, enforcement would be meaningless. *NLRB v. Raytheon Co.,* 398 U.S. 25, 90 S.Ct. 1547, 26 L.Ed.2d 21, involved a similar situation and upheld the Board's judgment that a remedial order was needed for its future effect. This remedial order was entered after an earlier order setting aside an election and ordering the employer to cease and desist from unlawful conduct. Occurrence of an intervening election and its certification, showing compliance during the latter election, did not render the cause moot or make enforcement of the cease and desist provision improper. Id. at 27, 90 S.Ct. at 1548, 26 L.Ed.2d at 24. We likewise sustain the Board's determination here, despite the developments that are cited.

■ We have, however, examined the order in light of the arguments made by Dover to determine whether any modification is proper. See *May Stores Co. v. NLRB,* 326 U.S. 376, 392, 66 S.Ct. 203, 212, 90 L.Ed. 145. In order that its provisions fairly take account of the fact that the election and certification occurred, a minor modification of the order is made as shown in the margin.[8]

As modified, the order will be enforced.

BARRETT, Circuit Judge (concurring):

I concur in light of the authorities supportive of the opinion and the Board's apparent "well settled" rule that interference, restraint and coercion under Section 8(a)(1) of the Act does not turn on an employer's good faith, lack of guilty scienter or motive.

I feel that the employer in the case at bar did everything reasonably or practicably possible to avoid a Section 8(a)(1) violation. The Board's "well settled" test does, in my judgment, impose an obligation on the employing company to *insure* or *guarantee* that none of its supervisory personnel shall say or do anything threatening or coercive. This rule does, in effect, impose the doctrine of *strict liability* upon the employer, regardless of good faith efforts which are evidenced in this record. There is nothing fair about the application of such a rule leading to a finding of an unfair labor practice.

---

8. Paragraph 1(a) of the present order prohibits:
Coercively warning employees that if the Union was successful in its organizational program a substantial number of union adherents would be dismissed. (A. 42)
The notice presently prescribed by the Board states:
WE WILL NOT coercively warn employees that if the Union is successful in its organizational program a substantial number of adherents of the Union will be dismissed. (A. 45)

Paragraph 1(a) is modified to prohibit:
Coercively warning employees that a substantial number of union adherents would be dismissed depending on the outcome of a Union organizational program.
Likewise, the language of the first paragraph of the notice is modified to read:
WE WILL NOT coercively warn employees that *a substantial number of adherents of the Union will be dismissed depending on the outcome of a Union organizational program.*