**ST. JOHN'S HOSPITAL AND SCHOOL OF NURSING, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 76–1130.**

United States Court of Appeals, Tenth Circuit.

July 14, 1977.

---

**1370**

Elliott, Kansas City, Mo., on the brief), for petitioner.

Ruth E. Peters, Washington, D. C. (William R. Stewart, Marion Griffin, John S. Irving, John E. Higgins, Jr., Carl L. Taylor, and Elliott Moore of the N.L.R.B., Washington, D. C., on the brief), for respondent.

William F. Ford, Atlanta, Ga. (Michael H. Campbell, Fisher & Phillips, Atlanta, Ga., Carl Weissburg and Lyle R. Mink of Weissburg & Aronson, Inc., Los Angeles, Cal., on the brief), for amici curiae Hospital Corp. of America and Federation of American Hospitals.

Richard L. Epstein, Chicago, Ill. (K. Bruce Stickler and Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., of counsel on the brief), for amicus curiae American Hospital Association.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

This case arises upon the petition of St. John's Hospital (Hospital) for review of an order of the National Labor Relations Board (Board) and the Board's cross-application for enforcement of its order. Jurisdiction is conferred by sections 10(e) and (f) of the National Labor Relations Act (Act), 29 U.S.C. §§ 160(e), (f). The Board's decision and order are reported at 222 NLRB No. 182, and hold that the Hospital violated section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), by promulgating and enforcing an overly broad rule restricting employee solicitation and distribution of material and by reprimanding four employees for engaging in a "heated discussion" of the "pros and cons of unionization" during working time in a working area.

I.   *The "No-Solicitation" Rule.*

On August 13, 1974, the Hospital promulgated, and since that date has continuously

Harry L. Browne, Spencer, Fane, Britt & Browne, Kansas City, Mo. (with Clifton L.

enforced,[1] a no-solicitation rule applying to all employees:

> Except to solicit participation in official hospital employee programs, no employee shall solicit any other employee of the hospital for any purpose during working time or in working areas of the hospital, or in any area to which patients and visitors have access. No employee shall distribute any matter of any kind in any area of the hospital except in non-working areas where patients and visitors do not have access. At no time shall any employee solicit any patient or visitor for any purpose nor shall any employee distribute any matter to patients or visitors. This rule will be strictly enforced.

A.R. at 12.[2] The effect of this rule is to allow employee solicitation of union support and distribution of union material only on nonworking time in nonworking, employee-only areas. It is stipulated that these employee-only areas include a lunchroom and cafeteria used on a daily basis by 80% or more of the employees, as well as lounges, locker rooms, restrooms, and parking areas. The decision and order of the Board hold that notwithstanding the availability of these employee-only areas the rule promulgated by the Hospital is overly broad to the extent it prohibits solicitation in areas other than "strictly patient care areas" and distribution in nonworking areas accessible to patients and visitors.

We agree that the Hospital rule is overly broad but we also hold that the Board decision and order, in part, is faulty.

On appeal all parties[3] start from the premise that section 8(a)(1) of the Act, as interpreted by the Board and the courts, restricts employers from prohibiting employee solicitation of union support on nonworking time and from prohibiting distribution of union materials on nonworking time in nonworking areas absent special circumstances necessitating further restrictions to maintain discipline or production. E. g., Groendyke Transport, Inc., v. NLRB, 10 Cir., 530 F.2d 137, 141–42; Stoddard-Quirk Mfg. Co., 138 NLRB 615. All parties further agree that the special circumstances surrounding employment in a hospital setting justify some additional restrictions on employee solicitation and distribution in order to maintain the tranquil atmosphere essential to the Hospital's primary function of providing quality patient care. Thus, the issue presented is not whether the Hospital's restrictions on employee solicitation and distribution are impermissible per se, but rather to what areas these restrictions may be extended.[4]

The question thus presented, to strike an acceptable balance between employee solicitation under the Act projected against the concept of hospital patient care, is indeed difficult. A cautious judgment in such regard must note that error in such judgment may cause irreparable damage to patients, and thus to the public, while error in the other direction can be salvaged by the Board under proper use of its overall expertise in labor matters.

■ In reviewing the decision and order of the Board we are required by statute to

1. Since it is stipulated that the Hospital's no-solicitation rule has been continuously enforced, we need not consider whether the mere promulgation of an overly broad rule is unlawful. Cf., N.L.R.B. v. Shawnee Industries, Inc., 10 Cir., 333 F.2d 221, 225 (holding promulgation of an overly broad rule without enforcement not illegal under the special circumstances presented).

2. Citations to the administrative record on appeal will be indicated as "A.R. at ——."

3. The American Hospital Association, the Federation of American Hospitals, and the Hospital Corporation of America filed briefs amicus

curiae on behalf of the Hospital. In addition to filing a brief, the American Hospital Association participated in the oral argument of this case.

4. We are therefore not presented with the questions of the time periods or persons to which these restrictions may be applied. In the present case it is agreed that the Hospital may restrict all employee solicitation and distribution during working time as well as solicitation of and distribution to non-employees on the Hospital premises at any time.

afford conclusive effect to the Board's findings of fact if supported by substantial evidence on the record as a whole. 29 U.S.C. §§ 160(e), (f). *See NLRB v. Pipefitters Local 638,* 429 U.S. 507, 531, 97 S.Ct. 891, 51 L.Ed.2d 1. Similarly, the Board's interpretation of specific provisions of the Act is ordinarily entitled to considerable deference in light of the Board's " 'special function of applying the general provisions of the Act to the complexities of industrial life' . . . and its special competence in this field." *NLRB v. Weingarten,* 420 U.S. 251, 266, 95 S.Ct. 959, 961, 43 L.Ed.2d 171 *quoting NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 236, 83 S.Ct. 1139, 10 L.Ed.2d 308. Nevertheless, reviewing courts are not "to stand aside and rubber stamp their affirmance" of Board decisions inconsistent with a statutory mandate or contrary to congressional policy and are specifically empowered "to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part [an] order of the Board." *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839; 29 U.S.C. §§ 160(e), (f).

The Board's decision starts with the premise that since the Hospital's rule limits solicitation during working time and distribution of literature in nonwork areas, it is presumptively unlawful. *Groendyke Transport, Inc., supra.* The Board concedes, however, that this "presumption" is at least partially dispelled by the Hospital's recognized need to provide a tranquil atmosphere conducive to its primary function of providing quality patient care:

> We recognize that the primary function of a hospital is patient care and that a tranquil atmosphere is essential to the carrying out of that function. In order to provide this atmosphere, hospitals may be justified in imposing somewhat more stringent prohibitions on solicitation than are generally permitted. For example, a hospital may be warranted in prohibiting solicitation even on nonworking time in strictly patient care areas, such as patient's rooms, operating rooms, and places where patients receive treatment, such as x-ray and therapy areas. Solicitation at any time in those areas might be unsettling to the patients—particularly those who are seriously ill and thus need quiet and peace of mind.

A.R. at 34–35. The Board then proceeds to draw a distinction between those patients in "strictly patient care areas" and patients in other "patient access areas such as cafeterias, lounges, and the like," concluding that although union solicitation may be "unsettling" to the former group, it could have no "adverse effect" on the latter. *Id.* at 35.

It is unclear from the Board's decision what restrictions would be allowed in other areas accessible to patients [5] but not specifically classified by example such as hallways, elevators, stairs, or waiting rooms. The only guideline for classifying these areas supplied by the Board's decision is the blanket assertion that "[o]n balance, the interests of patients well enough to frequent such areas [as cafeterias, lounges, and the like] do not outweigh those of the employees to discuss or solicit union representation." A.R. at 35. Under this rationale the distinction between various patient access areas is made to turn on the condition of the patients "frequenting" these areas and whether such areas are "strictly" devoted to patient care.

This distinction between strictly patient care areas and other patient access areas based on the relative conditions of the patients frequenting those areas finds no support in the record. The only record evidence adduced before the administrative

---

5. For purposes of the discussion that follows the term "patient access areas" will be used as a shorthand reference for areas accessible to patients and visitors. The record on appeal does not indicate that there are any areas of the Hospital to which visitors have access where patients are not also allowed and our experience does not confirm the existence of such areas. We therefore reserve the question of whether the special circumstances presented by the commingling of employees and visitors, in the absence of patients, justifies restrictions on employee solicitation of and distribution to other employees.

law judge related to the circumstances surrounding the reprimands issued to four hospital employees. (See part III *infra*.) No evidence was presented regarding the relative abilities of confined vis-à-vis ambulatory patients to withstand the admittedly "unsettling" effects of union solicitation or the medical and administrative reasons for deciding whether to confine a patient to his or her room. We are therefore compelled to conclude that the ultimate factual inferences on which the Board's distinction was based were drawn not from the record evidence but rather from the Board's own perceptions of modern hospital care and the physical, mental, and emotional conditions of hospital patients—areas outside the Board's acknowledged field of expertise in labor/management relations. Moreover, this distinction is difficult of application at best and indeed has been rejected by the Board in a similar context as "specious."

In *Mount Airy Foundation*, 217 NLRB No. 137, involving the classification of various types of hospital employees for purposes of forming appropriate collective bargaining units, the Board stated:

> If any particular fact is evident it is the fact that all employees in the health care industry, sharing as they must a genuine concern for the well-being of patients, are involved in "patient care."

> The degree or immediacy of such involvement may vary but . . . to distinguish between "direct" and "indirect" care can fairly be anticipated to be a distinction of specious value. Ultimately, the questions to be posed will involve such ephemeral inquiries as whether an employee who serves a meal to a patient is indirectly involved in that patient's "care," whereas an employee isolated in a room collecting data on blood samples is directly involved in the patient's "care."

. . . Examples are endless. All lead to the conclusion that the dichotomy poses more problems than it solves.

*Id.* at 1974–75 CCH Lab. L. Rep. ¶ 15,695 at 26,062.[6]

Similarly, in the case at bar the distinction drawn by the Board between "strictly patient care areas" and "other patient access areas" necessarily "involve[s] such ephemeral inquiries" as whether the hallways outside a patient's room are "strictly" involved in patient care when used for transporting the patient from his room to surgery, but not when used by hospital employees to transport medicines or supplies to a bedridden patient. Is a hallway or elevator "more" involved in patient care when used by an ambulatory patient on his or her way to a treatment facility than when used by that same patient on the way to a "public" cafeteria? Does solicitation carried on in a patient's room or operating room suddenly lose its "unsettling effect" if moved to the hallway outside the patient's open door or to the elevator in which the patient is being transported to surgery. "Examples are endless. All lead to the conclusion that the dichotomy poses more problems than it solves." *Id.*

■ Since the intermingling of patients and employees in patient access areas of the Hospital, even under the Board's rationale, is a "special circumstance" operating to dispel the presumption of illegality associated with restrictions on solicitation during working time, we are not required "to stand aside and rubber stamp" the "balance" struck by the Board in allowing solicitation in some patient access areas but not others. Rather it is our duty to review this balance to determine whether the accommodation reached by the Board is reasonable in light of expressed congressional policy and the commonly accepted circumstances attend-

---

**6.** The Board attempts to distinguish *Mount Airy* on grounds it involved a determination of appropriate bargaining units rather than the validity of a no-solicitation rule. The significance of the *Mount Airy* case, however, is its evaluation of the *manner* in which health care facilities are operated, *viz.*, the fact that all employees are involved in "patient care." These underlying facts are the same whether the labor dispute involves bargaining units or solicitation rules and demonstrate the difficulty involved in applying the phrase "strictly patient care areas" to the realities of complex, interrelated hospital operations.

ing modern hospital care. In so doing, however, we are not free to disturb the Board's choice between two conflicting views, even though we would have made a different choice had the matter been before us *de novo*, unless we are convinced the Board's decision is unsupported by substantial evidence in the record considered as a whole or is unreasonable. *E. g., NLRB v. R. L. Sweet Lumber Co.*, 10 Cir., 515 F.2d 785, 793, *cert. denied*, 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 302.

■ The legislative history of the 1974 amendments to the Taft-Hartley Act extending its coverage to nonprofit health care facilities clearly demonstrates the overriding congressional concern that the self-organizational activities of health care employees not be allowed to "disrupt the continuity of patient care."

Many of the witnesses before the Committee, including both employee and employer witnesses, stressed the uniqueness of health care institutions. *There was a recognized concern for the need to avoid disruption of patient care wherever possible.*

It was this sensitivity to the need for continuity of patient care that led the Committee to adopt amendments with regard to notice requirements and other procedures related to potential strikes and picketing.

S.Rep. No. 93–766, 93rd Cong., 2nd Sess. *reprinted in* 1974 U.S.Code Cong. & Admin. News, vol. 2, 3946, 3951 (emphasis added). The Board strenuously argues that this congressional concern was limited to the possible disruption of patient care accompanying strikes or picketing and insists the fact that Congress made no exception regarding solicitation requires application of the "normal" presumptions against no-solicitation rules. The Hospital argues with equal vigor that congressional silence on the issue of solicitation should be interpreted as an approval of the Board's then existing policy of allowing restrictions on solicitation in health care facilities in all areas to which patients and visitors had access. (The Board concedes the Sixth Circuit decision in *NLRB v. Summit Nursing Convalescent Home*, 6 Cir., 472 F.2d 1380, upholding a rule prohibiting solicitation and distribution in all patient and public access areas, and its own decision in *Guyon Valley Hospital, Inc.*, 198 NLRB No. 28, upholding restrictions on solicitation in all working areas, accurately represent the state of the law prior to the 1974 amendments to the Act.) We are not persuaded that the legislative history requires acceptance of either of these positions. We are convinced, however, that Congress was deeply concerned with the "need to avoid the disruption of patient care *wherever possible*" and that this concern was not limited to those areas in which specific statutory exceptions were enacted. Accordingly, we conclude that the needs of hospital patients are to be afforded considerable weight in striking the appropriate balance between the undisputed rights of hospital employees to engage in self-organizational activities and the equally undisputed right of the Hospital to maintain services, order, and discipline in its operations.

In this connection we are compelled to find that the balance struck by the Board with regard to solicitation in patient access areas failed to give sufficient consideration to the expressed congressional concern for the needs of the Hospital's patients. Once it is admitted that union solicitation is disruptive of the tranquil atmosphere essential to the Hospital's primary function of providing quality patient care and may be unsettling to patients who are seriously ill and thus in need of quiet and peace of mind, it is unreasonable to conclude that these adverse effects of union solicitation will occur in some patient access areas but not in others. As demonstrated above such a distinction is totally unsupported by the record evidence and involves medical and administrative judgments outside the Board's acknowledged area of expertise.

■ An additional factor to be considered in striking the proper balance between the rights of the employees, the Hos-

pital, and the patients is the availability of other areas in which union activities are permitted. The Board submits the availability of other means of access to employees is irrelevant until the Hospital has rebutted the presumptive illegality of its no-solicitation rule by establishing "special circumstances" making such a rule necessary to maintain efficient and orderly operations, citing *NLRB v. Magnavox Co.*, 415 U.S. 322, 326–27, 94 S.Ct. 1099, 39 L.Ed.2d 358. Accepting the Board's argument as a correct statement of the law on this point, even under the Board's rationale the Hospital's need to provide the tranquil atmosphere essential to quality patient care justifies at least some restrictions on solicitation in areas where it "may be unsettling to the patients—particularly those who are seriously ill and thus in need of quiet and peace of mind." This recognition of the unsettling effects of solicitation on patients must be viewed as establishing a "special circumstance" making at least some restrictions on solicitation necessary to maintain efficient and orderly operations. Once this special circumstance is established, even under the Board's rationale, the presumption of illegality is rebutted and the Board is required to consider the availability of other means of communication with the employees in arriving at the proper balance between the rights of the employees and those of the employer.

■ In the present case it is stipulated that 80% or more of the employees use the employee-only lunchroom and cafeteria on a daily basis. It is further stipulated that there are numerous other employee-only areas such as lounges, locker rooms, restrooms, and parking areas in which unrestricted access to employees is permitted. Although not controlling, when this factor is considered in conjunction with the expressed congressional concern for protecting "patient care" wherever possible, the conceded fact that solicitation may be un-

settling to patients, and the absence of any record evidence to support a distinction between the sensibilities of bedridden vis-à-vis ambulatory patients we are compelled to conclude that the balance struck by the Board is unsupported and unreasonable. In contrast the Hospital's restriction on solicitation in all patient access areas comports with the realities of modern hospital care, where the emphasis is on having the patient ambulatory as soon as possible, and strikes a reasonable, easily applicable balance between the interests of the Hospital in maintaining the tranquil atmosphere essential to quality patient care and the self-organizational interests of the employees. We therefore deny enforcement of the Board's order insofar as it would permit solicitation in patient access areas.

Alternatively, we hold that for the reasons discussed above the Board's definition of "strictly patient care areas" must be interpreted to include such areas as halls, stairways, elevators, and waiting rooms accessible to patients.

■ As to "other patient access areas such as cafeterias, gift shops, and the like," we conclude that even if it is conceded these areas are not directly related to the Hospital's primary function of providing patient care, the Hospital nevertheless maintains the same commercial interests in these facilities as are held by the management of retail stores and restaurants located in other types of establishments. Since there is no question that the Hospital would be entitled to prohibit solicitation and distribution in all public access areas of its cafeteria and gift shop were they located anywhere outside the Hospital premises, *Marriott Corp. (Children's Inn)*, 223 NLRB No. 141; *McDonald's Corp.*, 205 NLRB No. 78, we conclude that the Hospital does not lose that right simply because its public cafeteria and gift shop are part of a hospital complex rather than a shopping mall or drive-in restaurant.[7]

---

7. After this case was submitted the First Circuit in *NLRB v. Beth Israel Hospital*, 1 Cir., 554 F.2d 477, granted enforcement of a Board order

permitting solicitation and distribution in a hospital's public cafeteria and gift shop. *Beth Israel* is distinguishable from the present case

Finally, because distribution of union information is almost inevitably accompanied by solicitation of union support and poses additional problems resulting from discarded written material, *e. g.*, unsightly litter, safety or health hazards, and the potential for discarded materials to come into the possession of hospital patients, we conclude that the arguments advanced above apply *a fortiori* to distribution of union materials in patient access areas. This conclusion is also in accord with the Board's established practice of permitting restrictions on distribution in all areas in which restrictions on solicitation are allowed. Enforcement of that part of the Board's order which would permit distribution in patient access areas is therefore denied.

## II. *Employee-Only Working Areas.*

■ The Board's decision and order also find the Hospital's no-solicitation rule overbroad as it applies to employee-only working areas. The Board freely admits that this position is a reversal of the rule announced in *Summit Nursing* and *Guyon Valley, supra*, but submits it is free to change existing policy to conform with its evolving experience in the health care field. In light of the Supreme Court's explicit language in *NLRB v. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171, we are compelled to accept this position.

We agree that [the Board's] earlier precedents do not impair the validity of the Board's [present] construction. . . To hold that the Board's earlier decisions froze the development of this important aspect of the national labor law would

misconceive the nature of administrative decision making. . . .

. . . It is the province of the Board, not the courts, to determine whether or not the "need" exists in light of changing industrial practices and the Board's cumulative experience in dealing with labor-management relations. . . [W]hile [the Board's construction] may not be required by the Act, [it] is at least permissible under it, and insofar as the Board's application of that meaning engages in the "difficult and delicate responsibility" of reconciling conflicting interests of labor and management, the balance struck by the Board is "subject to limited judicial review."

*Id.* at 265–67, 95 S.Ct. at 967, 968. In the present case the decision to allow solicitation in employee-only working areas involves areas where by definition there is no commingling of patients and employees. Thus, the Board's decision involves situations comparable to those found in the "normal" labor-management dispute and concerns matters within the Board's acknowledged field of expertise. Moreover, although the balance struck by the Board may not be expressly required by the Act, it is certainly permissible and is therefore subject to only "limited judicial review." We are accordingly compelled to agree with the Board's determination that the Hospital failed to demonstrate any "special circumstances" surrounding these employee-only working areas that would justify a departure from the general rule against restrictions on solicitation in working areas.[8] In light of the fact the Hospital has found it

in several respects, however, including "the very substantial employee use" of the cafeteria and coffee shop and the apparent absence of comparable employee-only areas. Moreover, because of the narrow issue presented the *Beth Israel* court focused on the hospital's burden of demonstrating the detrimental effects of solicitation and distribution on patients. In the present case these detrimental effects are conceded by the Board and the issue is to what areas restrictions on employee activities may be extended. *Beth Israel* also failed to consider the hospital's normal "commercial" interests in the operation of a public cafeteria and coffee

shop and the fact restrictions on solicitation are universally allowed in analogous facilities in nonhospital settings.

8. The Hospital's reliance on the Board's decision in *The Great Atl. & Pac. Tea Co.*, 123 NLRB 747, *modified on other grounds*, 277 F.2d 759 (5 Cir., 1960), upholding restrictions on solicitation in certain employee-only working areas, is misplaced. In *A. & P. Tea* the Board found the restrictions were justified by the "hazardous conditions" existing in certain working areas. In the present case we have no basis for determining whether similar "hazardous conditions" exist in employee-only working

unnecessary to restrict other subjects of conversation in employee-only work areas,[9] we cannot conclude the decision of the Board to allow discussion of unionization in these areas is unreasonable. We therefore grant enforcement of that part of the Board's order permitting solicitation in employee-only working areas.

### III. The Written Reprimands.

On February 12, 1975, three Hospital technicians, Thelma Ray Perry, Debna Jehs, and Arlene Geiger, became involved in a conversation concerning working conditions in the Hospital and the "pros and cons" of unionization. The conversation took place during working time in a room utilized to prepare packages of sterilized surgical materials which was not accessible to patients or visitors. During the course of the conversation a nurses aide, Winifred Young, came into the room to deposit some materials, became briefly involved in the conversation, and then left. When technician Geiger left the room a few minutes later, she was confronted in the hallway by the supervisor of the technicians, Mrs. Gordiner, who asked "what was going on out there." Geiger replied that Perry, Jehs, and she were "having kind of an argument back there." Gordiner instructed Geiger to return to the room and ask Jehs to come out. When Jehs came out and admitted that she was upset because "we kind of got to arguing," Gordiner told her to write down everything that was said.

Gordiner subsequently reported to the Personnel Director of the Hospital, Joseph F. Wilson that several of the employees in her department had engaged in an argument concerning "the pros and cons of unionization of the hospital" and "that it was disrupting the work flow in the department." Acting upon the advice of counsel to handle the matter according to normal Hospital procedures for dealing with arguments on subjects other than unionization, Wilson instructed Gordiner to issue "counseling reports"[10] to all of the employees involved. During her conversations with at least two of the employees at the time the counseling reports were issued, Mrs. Gordiner made reference to the Hospital's no-solicitation rule and inquired if the employees were familiar with the rule. When asked what the rule had to do with the conversation in question, Mrs. Gordiner merely repeated her question and stated that the employees were not to discuss "religion, politics, or any other controversial subject," but that "[i]t would be all right to discuss sex or something like that" while the employees were working. A.R. at 19.

In his findings of fact the administrative law judge determined that Perry had not solicited union support during the discussion and that the conversation did not disrupt the manual operations in which the employees were engaged, but that "loud" tones were used and that at least two of the employees were "upset" by the conversation.[11] A.R. at 18–19. He further found that Gordiner's statement at the time the counseling reports were issued regarding the discussion of controversial subjects "in the circumstances of this case, was a prohi-

---

areas of the Hospital. As discussed *supra* the Hospital has the initial burden of establishing the existence of "special circumstances" sufficient to rebut the presumptive illegality of restrictions on solicitation in working areas. With respect to its employee-only working areas, the Hospital has not carried this burden. *See also* note 9 *infra*.

9. We reserve the question of whether under appropriate circumstances the Hospital could restrict all conversation in certain employee-only working areas.

10. The Hospital insists these "counseling reports" were not as serious as "reprimands." There is substantial support for the finding of

the administrative law judge, however, that these counseling reports were in the nature of disciplinary proceedings against the employees. In any event the severity of the discipline is irrelevant for purposes of determining whether section 8(a)(1) of the Act was violated by enforcement of an overly broad no-solicitation rule.

11. The Hospital submits this finding that at least two employees were "upset" by the conversation is in and of itself sufficient to support the conclusion that the conversation was disruptive. Although we agree that this finding could be so interpreted, the term "upset" encompasses a wide range of emotional states. The administrative law judge, who was in the

bition against talking about working conditions or unionization at any time on [the Hospital] premises, a rule even more restrictive than the [Hospital's] written rule." A.R. at 22. He then concluded that since the employees were reprimanded for breaching this "new rule," the reprimands violated section 8(a)(1) of the Act by discouraging employees from engaging in concerted activities, viz., "discussing working conditions and the necessity of organization to protect those conditions." *Id.* These findings were accepted by the Board with the modification that a counseling report was issued to nurses aide Winifred Young, as well as to technicians Geiger, Perry, and Jehs.

On appeal we are required by statute to give conclusive effect to the Board's findings of fact if supported by substantial evidence on the record as a whole. 29 U.S.C. §§ 160(e), (f). "Substantial evidence" has been defined as "more than a mere scintilla and connotes such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Ann Lee Sportswear, Inc. v. NLRB*, 10 Cir., 543 F.2d 739, 742, *citing Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126. In addition findings involving credibility "are peculiarly within the province of the hearing officer and the Board and are ordinarily entitled to acceptance on review." *NLRB v. Dover Corp.*, 10 Cir., 535 F.2d 1205, 1209, *cert. denied* 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976).

■ In the case at bar the classification of the conversation as "unusually loud" or as "disruptive of the normal work flow" requires the weighing of conflicting testimony and the assessment of the credibility of the various witnesses. Similarly, the determination of the motivating influence behind the reprimands is primarily a factual matter. Our review of the entire record convinces us that although there is conflicting evidence, the administrative law judge's findings that the conversation was not disruptive nor unusually loud and that the reprimands were issued in response to the subject matter of the conversation rather than because of the manner in which it was conducted [12] are substantially supported by the record—particularly by the testimony

best position to access the credibility of the various witnesses and the weight to be given their testimony, specifically found that technician Geiger "tended to overemphasize" and discounted her testimony accordingly. A.R. at 18 n.3. Where as here the evidence may reasonably be interpreted as supporting either of two conclusions, the findings of fact made by the hearing officer are entitled to affirmance on appeal.

12. The Hospital contends, and the Board concedes, that it is free "to stop employees from engaging in any loud conversation or disruption that disturbs working employees, patients, or visitors." Brief for NLRB at 15. The Hospital submits that this is all that was done in the present case. As discussed above, however, the question of whether the "counseling reports" were given in response to the subject matter of the conversation or to the manner in which it was conducted requires the weighing of conflicting testimony and the assessment of the credibility of the various witnesses. Here the Board has resolved this issue adversely to the Hospital and although there is certainly sufficient evidence to support a contrary finding, we are unable to conclude that the evidence considered as a whole fails to lend substantial support to the Board's determination.

The Hospital also argues that even if the conversation was not disruptive in fact, the counseling reports were justified under the circumstances by the Hospital's "good faith" belief that work was disrupted. This "good faith" defense was squarely rejected by the Supreme Court in *NLRB v. Burnup & Sims*, 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1, involving the discharge of two employees for allegedly making threatening statements in the course of union solicitation. In rejecting the employer's defense that it honestly believed the statements were made at the time the employees were discharged, the Court stated:

Over and again the Board has ruled that § 8(a)(1) is violated if an employee is discharged for misconduct arising out of a protected activity, despite the employer's good faith, when it is shown that the misconduct never occurred.

*Id.* at 23, 85 S.Ct. at 172 (citations omitted). Applying the *Burnup* rule to the facts of the case at bar, we are compelled to accept the Board's conclusion that the counseling reports in fact violated section 8(a)(1).

of technician Jerry Young who was present in the working room but did not become involved in the conversation. These findings are therefore accepted as "conclusive."

 With respect to the administrative law judge's finding that the statements of Mrs. Gordiner at the time the counseling reports were issued amounted to a "new rule" against discussing working conditions or unionization anywhere in the Hospital's premises, however, we conclude that this is an unsupported inference drawn from the underlying facts. Nothing in the record indicates that the discussion of working conditions or unionization was ever expressly mentioned by Mrs. Gordiner, although she was admittedly aware these were the subjects of the conversation for which the counseling reports were issued. If it is assumed that these subjects were therefore inferentially included under her rubric of "other controversial subjects" because of the context of her statements, it is also reasonable to assume that her directive had reference to the other circumstances of the conversation, viz., a conversation in an employee-only area during working time. There is no support for the conclusion that Gordiner's statements had reference to all areas of the Hospital at all times, particularly where she expressly referred to the Hospital's no-solicitation rule which permitted active solicitation in employee-only areas. Nevertheless, the administrative law judge could have found that Gordiner's statements amounted to a "new rule" against discussing working conditions and unionization, generally, as distinguished from active solicitation of union support which concededly may be prohibited during working time, under circumstances similar to those surrounding the conversation and that the employees were disciplined for violating this rule. We therefore agree with the Board that the Hospital's action impermissibly interfered with protected employee activities and grant enforcement of that portion of the Board's order pertaining to the reprimands of employees Geiger, Perry, Jehs, and Young.

Enforcement of the Board's order is granted in part and denied in part.