NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

The PRESBYTERIAN MEDICAL CENTER, Respondent.

No. 77-1155.

United States Court of Appeals, Tenth Circuit.

Argued May 12, 1978.

Decided Nov. 2, 1978.

Paul J. Spielberg, Deputy Asst. Gen. Counsel, Washington, D. C. (Frederick Havard, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., with him on the brief), for petitioner.

Henry C. Cleveland, III, of Saunders, Snyder, Ross & Dickson, Denver, Colo., for respondent.

Before DOYLE and LOGAN, Circuit Judges, and STANLEY, Senior District Judge.*

LOGAN, Circuit Judge.

The National Labor Relations Board (NLRB or Board) has applied to this Court for enforcement of its order adjudging that the Presbyterian Medical Center (Presbyterian or hospital) has engaged in unfair labor practices within the meaning of Section 8(a)(1) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 158(a)(1), and requiring it to take certain affirmative action.

At issue are the "no-solicitation and no-distribution" and the "no-access" rules of Presbyterian. Only the no-access issue was briefed and argued here, the parties having stipulated on April 29, 1977, that the identical issue with respect to the other rule was presented to our court in *St. John's Hospital and School of Nursing, Inc. v. NLRB,* 557 F.2d 1368 (10th Cir. 1977), then pending decision, and that this court's decision there "will necessarily control the decision of that issue in the instant case." The parties request we "grant or deny enforcement of the Board's order in this regard, depending on the outcome of the *St. John's Hospital* case."

The entire presentation to the administrative law judge for the NLRB was upon stipulated facts. Hearing was waived and the parties stipulated that no oral testimony was necessary or desired by any of the parties.

As relevant here the no-solicitation and no-distribution rule reads as follows:

> Because of the disruption to health care services of the hospital, no materials shall be distributed to and no solicitation shall be made of any hospital patient or employee in any public area within the hospital premises. Any solicitation must be confined to nonwork and nonpublic areas and during nonworking time.

Nonemployees were prohibited from solicitation on hospital premises for any reason whatever.

The no-access rule is stated in the following words:

---

* Of the District of Kansas, sitting by designation.

Employees are not to be on hospital premises except during assigned working hours or while attending an authorized hospital function. It is expected that employees will not visit areas other than those where they work during duty hours, unless with specific approval of their supervisors.

The only incident contained in the stipulation related to an off-duty employee, Mary Walter, who on a specified date began distributing union literature to hospital employees outside of the hospital entrance about 6:00 a. m., prior to her scheduled work hours which commenced at 8:00 a. m. At approximately 7:00 a. m., Mary Lou Harvey, the director of personnel of the hospital ordered Ms. Walter to stop the distribution, which she refused. The director then left momentarily and returned with a police officer and under threat of arrest for her activities, Walter ceased the distribution and left the area. Ms. Harvey, in ordering the halt, made reference to the no-access rule prohibiting off-duty employees from being on the hospital premises.

The stipulation also relates generally that Presbyterian, acting through Ms. Harvey and other agents or supervisors, has enforced the no-solicitation and no-distribution rule at its hospital.

As business justification for the no-access rule the stipulation states the following:
(a) Wage and hour considerations—Abuse of overtime by off-duty employees by remaining on the premises.
(b) Security—Protection of any off-duty employee who might be suspect in the theft of hospital property including drugs. To limit the exposure of liability to the Respondent for injuries to any off-duty employee who might be injured on the premises.
(c) Parking—Because of limited parking space, the Respondent feels that employees must get off premises in order to make room for a new shift of employees.
(d) Interference with work productivity.
Certain evidence is also stipulated, as relevant to justification for the no-access rule, including hospital visiting hours, the fact most employees are paid on an hourly basis from a time clock punch in and out system, overtime is permitted only when authorized by a supervisor, the parking lots are unfenced and particular hospital doors are unlocked during specified hours. It was also recited that employees were required to park only in the employee parking lot. There are approximately 850 employees (of a total of 1,700) working from 6:00 a. m. to 5:30 p. m. but only 568 designated employee parking spaces. There are also separately designated parking spaces for 180 visitors, 35 housestaff (residents and interns) and 77 doctors. The stipulation indicated that the hospital had caused the arrest of three employees upon suspicion of taking drugs and 12 for nondrug thefts during the period January 1976 to July 13, 1976, but it was not known whether any of these individuals were convicted. Five employee-owned cars were stolen from the employees' parking lot during the same period. All drug dispensaries are physically located inside the hospital building.

No evidence was recited in the stipulation as specifically relevant to the no-solicitation, no-distribution rule.

I

Treating first the no-access rule, we think the outcome is controlled by *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), and *Beth Israel Hospital v. NLRB,* —— U.S. ——, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978). *Republic Aviation* dealt with the precise situation here involved in a nonhospital context. It upheld a Board order finding invalid a rule prohibiting employees from distributing union literature during their nonworking time in the plant and adjacent company-owned parking lots. In so holding the Court recited the statutory scheme of the LMRA whereby Congress has delegated to the NLRB the responsibility to work out the adjustments between the right of self-organization which the labor laws give to employees and the right of employers to maintain discipline within their establishments. It found the employer had not

shown such special facts or circumstances justifying its rule as to overturn the Board's determination. This holding has been reconfirmed most recently in *Eastex, Inc. v. NLRB,* —— U.S. ——, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978).

*Beth Israel* involved solicitation of union support and distribution of union literature during nonworking time in a hospital cafeteria and coffee shop. The Court cited *Republic Aviation* with approval, and adopted its approach in a hospital context. It said:

> In summary, we reject as without merit petitioner's contention that, in enacting the 1974 Health Care Amendments, Congress intended the Board to apply different principles regarding no-solicitation and no-distribution rules to hospitals because of their patient care functions. We therefore hold that the Board's general approach of requiring health-care facilities to permit employee solicitation and distribution during nonworking time in nonworking areas, where the facility has not justified the prohibitions as necessary to avoid disruption of health care operations or disturbance of patients, is consistent with the Act. We hold further that, with respect to the application of that principle to petitioner's cafeteria, the Board was appropriately sensitive to the importance of petitioner's interest in maintaining a tranquil environment for patients. Insofar as petitioner's challenge is to the substantiality of the evidence supporting the Board's conclusions, this Court's review is of course limited.

—— U.S. at ——, 98 S.Ct. at 2477.

■ Thus, the Board's findings must stand unless the hospital justifies the prohibitions as necessary to avoid disruption of health-care operations or disturbance of patients. The burden is upon the hospital. Earlier in the opinion the Court stated the review standard:

> The judicial role is narrow: The rule which the Board adopts is judicially reviewable for consistency with the Act, and for rationality, but if it satisfies those criteria, the Board's application of the rule, if supported by substantial evidence on the record as a whole, must be enforced. . . .

—— U.S. at ——, 98 S.Ct. at 2474.

After restating the hospital's business justifications for the no-access rule, the administrative law judge's discussion was as follows:

> Respondent, however, has failed to provide an adequate factual basis for establishing that these four assertions serve as valid business justifications. No evidence is presented to show that disputes regarding overtime would be significantly more frequent should off-duty employees be allowed access to outside non-working areas of the hospital. Similarly, there is no evidence offered to show that conversations between outgoing and oncoming personnel would interfere with work productivity. While it is stipulated that there have been 15 arrests of employees for thefts of hospital drugs and property during approximately the first 6 months of the year, there is no showing how many, if any, of these thefts involved off-duty employees, or that the alleged crime problem could not be adequately controlled by denying off-duty employees access to the interior of the hospital building. Finally, to the extent Respondent relies on the insufficiency of parking spaces, its rule is misdirected. The rule is not addressed to parking by off-duty employees, but rather to their personal presence in the area. . . .

■ We also are unimpressed with the justifications given. Certainly they do not seem to have any connection with the disturbance of patients and very little to direct disruption of health-care operations. The Board's ruling as to the no-access rule will be enforced.

## II

We were requested by the parties to grant or deny enforcement of the Board order as to the no-solicitation, no-distribution rule "depending on the outcome of the *St. John's Hospital* case." Since *St. John's Hospital and School of Nursing, Inc. v.*

*NLRB,* 557 F.2d 1368 (10th Cir. 1977), the Supreme Court has decided *Beth Israel Hospital v. NLRB,* —— U.S. ——, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978), and an appropriate disposition of this aspect of the case must take that decision into account. In *St. John* this Court denied enforcement to that portion of the Board's order which permitted solicitation and distribution of union materials in areas of the hospital to which patients had access. Alternatively the Court found that the Board's definition of "strictly patient care areas" (the only places it would permit the no-solicitation rule to operate) must be interpreted to include halls, stairways, elevators and waiting rooms accessible to patients. In denying enforcement of the order in cafeterias and gift shops within the hospital to which patients had access, the Court partly relied upon an analogy to public restaurants and cafeterias where it is well established that a no-solicitation rule may be enforced. 557 F.2d at 1375.

Since the National Labor Relations Board in *St. John* conceded that union activity in the presence of patients would have an "unsettling" effect upon them, this Court in effect placed the burden upon the Board to demonstrate the validity of the line which it drew that union solicitation could occur in all but "strictly patient care areas." In the absence of significant proof that the line was meaningfully drawn, the Board's distinction was rejected.

In *Beth Israel* the NLRB ruling in *St. John* was treated as the basic Board decision at issue. Mr. Justice Brennan, for the majority, said that the NLRB concluded in *St. John* "on a record devoid of evidence which contradicted that assessment, that the possibility of disruption to patient care in those areas [other than immediate patient care areas such as lounges and cafeterias] must be deemed remote." —— U.S. at ——, 98 S.Ct. at 2471. In upholding the Board's order he made the following analysis of the hospital's arguments:

> Arguing that the Board's conclusion regarding the likelihood of disruption to patient care which solicitation in a pa-

tient-access cafeteria would produce is essentially a medical judgment outside of the Board's area of expertise, it [the hospital] contends that the Board's decision is not entitled to deference. Rather, since it, not the Board, is responsible for establishing hospital policies to ensure the well-being of its patients, the Board may not set aside such a policy without specifically disproving the hospital's judgment that solicitation and distribution in the cafeteria would disrupt patient care. Brief for Petitioner 18. We think that this argument fundamentally misconceives the institutional role of the Board.

> It is the Board on which Congress conferred the authority to develop and apply fundamental national labor policy. Because it is to the Board that Congress entrusted the task of "applying the Act's general prohibitory language in the light of the infinite combinations of events which might be charged as violative of its terms," *Republic Aviation, supra,* 324 U.S. at 798, 65 S.Ct. 982 that body, if it is to accomplish the task which Congress set for it, necessarily must have authority to formulate rules to fill the interstices of the broad statutory provisions. It is true that the Board is not expert in the delivery of health-care services, but neither is it in pharmacology, chemical manufacturing, lumbering, shipping or in any of a host of varied and specialized business enterprises over which the Act confers its jurisdiction. But the Board is expert in federal national labor relations policy, and it is in the Board, not petitioner, that the 1974 amendments vested responsibility for developing that policy in the health-care industry.

—— U.S. at ——, 98 S.Ct. at 2473.

The Court emphasizes the relevance of evidence of the availability of alternative areas where employees may exercise their Section 7 rights, but places the burden upon the hospital to show such harm to its patient care mission as to justify any infringement upon these rights in what are not strictly patient care areas. The court did not attempt to define what is a "strictly

patient care area," [1] and contemplated that dependent upon the facts shown a different line might be drawn in particular cases. This seems apparent in its remand of *Lutheran Hospital of Milwaukee, Inc. v. NLRB,* —— U.S. ——, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978).

In the instant case there was a stipulation of the no-solicitation, no-distribution policy, and that it was enforced by the hospital. No evidence was set forth as allegedly relevant to the no-solicitation policy. None of that which was stipulated as possibly relevant to the no-access policy directly bears upon activities in the presence of patients. We do not think that this lack of stipulated evidence was based upon a contemplation that our *St. John* case would settle the law on this point. The evidence stipulation here was made July 13, 1976, and the agreement not to brief but to rely upon our ruling in *St. John* was entered approximately April 29, 1977.

We considered whether to remand the case to the Board for further proceedings. But on the facts presented the instant case falls within the holding of *Beth Israel* where the court enforced the Board's order. The only incident here involved distribution of literature outside the hospital building. We do not resolve hypothetical disputes, nor give a party an opportunity to repair deficiencies of proof in cases submitted upon stipulated facts.

### III

An argument is made that the Board's order should not be enforced because it amounts to a retroactive application of a Board adjudication. This is based upon the fact that *Tri-County Medical Center, Inc.,* 222 N.L.R.B. 1089 (1976), which established the off-duty employee distribution rule set out in the Board's order, was not adopted until after the incident forming the basis of this case, and significantly limits the holding in *GTE Lenkurt, Inc.,* 204 N.L.R.B. 921

(1973), upon which the hospital claims to have relied. We do not decide whether this situation falls within the rule of *NLRB v. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), where the Board was permitted to apply retroactively a rule change.

No back pay or reinstatement is requested. The order we enforce simply requires the hospital cease applying the rules involved here, and refrain from future violations of employee rights. It requires posting a notice to employees in a specified form, but that notice relates only to the future and does not contain any acknowledgment of past transgressions except as may be inferred from the fact it is required to be posted.

We determine that the order of the Board should be and the same is enforced.

---

1. There are apparently inconsistent references in the opinion, one indicating that "lounges" and cafeterias are not immediate patient care areas, ⋯ U.S. at ⋯, 98 S.Ct. at 2470, and another indicating that patient care and therapy functions are largely performed in operating rooms, patients' rooms, and "patients' lounges." At ——, 98 S.Ct. at 2476.