# NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

# ST. JOSEPH HOSPITAL, Respondent.

## No. 77–1279.

United States Court of Appeals,
Tenth Circuit.

Nov. 30, 1978.

---

Bernard P. Jeweler, N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Kenneth B. Hipp, N. L. R. B., Washington, D. C., on brief), for petitioner.

James E. Hautzinger of Dawson, Nagel, Sherman & Howard, Denver, Colo., for respondent.

Before DOYLE and LOGAN, Circuit Judges, and STANLEY,* Senior District Judge.

DOYLE, Circuit Judge.

The NLRB here petitions for enforcement of its order issued to respondent St. Joseph Hospital. The finding of the Board was that the Hospital had violated § 8(a)(1) of the Act by promulgating and enforcing an overly broad no-solicitation, no-distribution rule. The ruling of the Board was that the Hospital's rules restricted the employees' rights to communicate with one another concerning the advantages and disadvantages of union organization. The Board also found that the Hospital had improperly reprimanded three of its employees for violation of these rules.

This Hospital is located in Albuquerque, New Mexico. It is a 325-bed facility which has some 1,200 employees on the payroll. Its service is, for the most part, short-term acute medical care for periods of three to ten days. However, patients in the neurology and orthopedic departments may receive long-term care continuing for several months.

* Of the District of Kansas, sitting by designation.

The first no-solicitation rule promulgated by the Hospital was issued on January 31, 1975. It provided:

*NO SOLICITATION RULE*
*SOLICITATIONS BY EMPLOYEES*

Because of the disruption to health care services of the hospital, no materials shall be distributed to and no solicitation shall be made of any hospital patient or employee in any *public* area within the hospital premises. Any solicitation must be confined to *non-work* and *non-public* areas and during *non-working* time.

*SOLICITATIONS BY NON–EMPLOYEES*

Non-employees may not solicit on hospital premises for any reason whatsoever.

There was a reference in the employee handbook to the bulletin board notice with respect to the no-solicitation rule.

In August 1975, the Southwestern Council of Industrial Workers, AFL–CIO, commenced efforts to organize certain of the employees of the Hospital.

Subsequently, on April 15, 1976, the Hospital issued a memorandum which was distributed with the employees' paychecks, which stated:

It seems to be necessary from time to time to call all our personnel's attention to the hospital policy of no soliciting.

*SOLICITATIONS BY EMPLOYEES*

Because of the disruption to health care services of the hospital, no materials shall be distributed to and no solicitation shall be made of any hospital patient or employee in patient care areas or other working areas nor on any employee's working time, either the working time of the solicitor or the employee being solicited. Any solicitation must be confined to non-work areas such as lounges and cafeteria and during non-working time.

*SOLICITATIONS BY NON–EMPLOYEES*

Non-employees may not solicit on hospital premises for any reason whatsoever. This includes all forms of solicitation including selling chances, tickets, vitamins, Avon products, bread, jewelry, cosmetics, baseball and football pools, etc.

There have been many warnings about this policy in the past. We therefore feel that the next time an employee violates this policy we shall have to immediately discharge him or her.

The above memorandum was somewhat less restrictive than the notice posted on the bulletin board. It did not, however, become official since it was not published by posting. Thus the January 31, 1975 notice continued to be the only one which had been posted. It continued to be so posted as of the time of the Board proceedings.

In actual practice, according to the evidence, the Hospital allowed solicitation and distribution in the cafeteria, the first floor lobby, the first and second floor hallways, and the main hallways on the service and ground floors. It prohibited such solicitation and distribution in all other areas, and these included the employee-only lounges and locker rooms on the nursing floors. The practices which were actually allowed were somewhat less restrictive than the prohibitions that were posted on January 1, 1975. These are, however, inconsistent with the April 15, 1976 memorandum which permitted solicitation in the lounges (notwithstanding that the Hospital continued to prohibit solicitation in the employee-only lounges).

The reprimands which are referred to above were issued on April 19, 1976, to Gilbert Moreno and Leroy Sandoval. These stated that the two employees had violated the no-solicitation, no-distribution rule on working time. On April 21, 1976, another employee, Howard Conrad, was orally reprimanded for violating the rules by making antiunion statements.

The Board adopted the findings of the administrative law judge that the Hospital had violated § 8(a)(1) of the Act by promulgating and enforcing an overly broad no-solicitation, no-distribution rule. The administrative law judge had found that the Hospital had discriminatorily maintained an overly broad no-solicitation, no-distribution rule which prohibited all solicitation in all working areas during nonworking time, and

which prohibited solicitation and distribution on nonworking time in nonwork areas such as employee lounges and locker rooms and areas to which visitors have access, including hallways, lobbies and lounges on all floors above the second floor, "thereby restraining and coercing employees in violation of Section 8(a)(1) of the Act."

The Board found also that the Hospital had improperly reprimanded employees Moreno, Sandoval and Conrad for violations of the overly broad rules.

The Board seeks enforcement of its order requiring the Hospital to cease and desist from

(a) Promulgating any rule or regulation prohibiting its employees from soliciting on behalf of any labor organization on Respondent's premises other than immediate patient care areas during nonworking time, or prohibiting the distribution of union literature in nonworking areas during employees' nonworking time.

(b) In any like manner interfering with, restraining or coercing their employees in the exercise of their rights protected by Section 7 of the Act.

A further requirement of the Board's order required the Hospital to rescind the unlawful aspects of its rule and to post a notice of the recision. It also required it to withdraw the written reprimands from the files of Moreno and Sandoval and to withdraw any notation that there might be concerning the oral reprimand of Conrad.

The Board's demand is for enforcement of its order pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e).

Section 8(a)(1) of the Act prohibits an employer from interfering with, restraining or coercing employees who are exercising rights guaranteed by § 7, which provides that employees have the right to engage in union organizational activities.

There has been no dearth of legal activity in this area of hospital solicitation in recent months. The Supreme Court has issued some of these decisions, including *Beth Isra-*el Hospital v. N.L.R.B.*, 437 U.S. 483, 98 S.Ct. 2463, 57 L.Ed. 370 (1978). Essentially the rule of this case was that solicitation was not to be prohibited in the cafeteria. It also gave some indications as to factors to be considered in analyzing other areas of the Hospital.

In *Beth Israel*, the Supreme Court ruled that solicitation and distribution could not be prohibited on nonworking time in nonworking areas where the respondent had not justified the prohibition as necessary to avoid disruption of health care operations or disturbance of patients.

In accordance with *Republic Aviation Corp. v. N.L.R.B.*, 324 U.S. 793, 803, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), the Court held that the burden was on the Hospital to show that special circumstances justified banning solicitation in the cafeteria since it was a natural gathering place for employees. The Hospital had not shown that solicitation or distribution had been or would be harmful. The Supreme Court added:

Patients who frequent the cafeteria would not expect to receive special attention or primary care there and any unusually sensitive to seeing union literature distributed or overhearing discussions about unionism, readily could avoid the cafeteria without interfering with the hospital's program of care.

98 S.Ct. 2463, at 2474.

In *Lutheran Hospital of Milwaukee, Inc. v. N.L.R.B.*, —— U.S. ——, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978), the Supreme Court vacated and remanded the judgment of the Seventh Circuit for further consideration in the light of *Beth Israel*. The Supreme Court had noticed in *Beth Israel* that the order enforced in *Lutheran* extended beyond the cafeteria to other areas of the hospital. *See Beth Israel Hospital v. N.L.R.B., supra*, 98 S.Ct. at 2467 n.5. We glean from this that the Supreme Court did not object to the Seventh Circuit's decision to allow solicitation in the cafeteria and that the reason for the remand did not pertain to the cafeteria, but, rather, other areas in which the Board's order was enforced by the Circuit Court. We need not speculate

further on why it was remanded with respect to these areas.

Very recently the Supreme Court has had another of these cases before it. *N.L.R.B. v. Baylor University Medical Center,* —— U.S. ——, 99 S.Ct. 299, 58 L.Ed.2d 202 (1978). The Supreme Court remanded the cafeteria issue for reconsideration in the light of *Beth Israel.* The D. C. Circuit had held that union solicitation could be banned in the cafeteria and vending areas of the Hospital because of the fact that virtually every area of the Hospital was a patient care area. *See Baylor University Medical Center v. N.L.R.B.,* 188 U.S.App.D.C. 109, 114–115, 578 F.2d 351, 356–57 (1978). The Hospital rule had limited solicitation to one small locker room. The D. C. Circuit's opinion was issued, of course, prior to the Supreme Court's decision in *Beth Israel.* At the same time the Supreme Court denied certiorari in *Baylor* seeking review on the issue whether union solicitation was to be permitted in the corridors. The D. C. Circuit had held that union solicitation could be banned in the corridors because the corridors, based on the evidence, were involved in patient care and patient well-being. *Baylor University Medical Center v. N.L.R.B.,* 188 U.S.App.D.C. 109, 118, 578 F.2d 351, 360 (1978).

Justice Brennan, who had written for the Court in *Beth Israel,* dissented in *Baylor* with respect to the decision denying review of the holding of the D. C. Circuit that solicitation and distribution could be banned in the corridors there in question.

This court has also had occasion to consider this problem. The first decision was *St. John's Hospital & School of Nursing, Inc. v. N.L.R.B.,* 557 F.2d 1368 (10th Cir. 1977). Subsequent to this the Supreme Court issued its decision in *Beth Israel, supra,* and following this we decided *N.L.R.B. v. National Jewish Hospital,* No. 77–1061 (10th Cir., Nov. 2, 1978) and *N.L.R.B. v. Presbyterian Medical Center,* 586 F.2d 165 (10th Cir. 1978).

In *National Jewish,* we concluded that the Hospital's attempt to ban union solicitation in the cafeteria was invalid in the light

of *Beth Israel.* Our conclusion was that this part of the Board's order was to be affirmed. We there noted that the Hospital had failed to introduce evidence of harm caused to patients by solicitation in the cafeteria, whereby the disruption of patient care from this was remote and the employees had been deprived of their rights under the National Labor Relations Act.

In *N.L.R.B. v. Presbyterian Medical Center,* 586 F.2d 165 (10th Cir. 1978), we determined that the Hospital could not prohibit distribution of union literature outside the Hospital building. We refused to remand the case for further proceedings to repair any deficiencies of proof where the case had been submitted on stipulated facts.

■ In the case at bar there is a failure on the part of the Hospital as to the necessity for banning union solicitation or distribution in the parking lot adjacent to the Hospital and used by hospital employees. Also, there is a failure on the part of the Hospital to present any evidence to show that special circumstances necessitated a ban on union solicitation and distribution in the cafeteria. The Hospital did not call any medical doctors as witnesses, but relied on general statements by a Hospital administrator that the policy was necessary to prevent patient care disruption. Such a conclusory statement has little, if any, probative value.

Before this court the Hospital maintains that solicitation and distribution have been permitted in the cafeteria since April 15, 1976. Also, no evidence was offered that this activity had any prejudicial effect on patient care. There was testimony as to whether a soliciting employee was standing in the hallway immediately in front of the cafeteria or inside the door. We agree with the Board that the exact location as between the area immediately outside the door and the area immediately inside the door is of no consequence for the same reasons that solicitation is permissible within the cafeteria. As we view it the Board's order is to be enforced at least to the extent that it would allow union solicitation and distribution of union literature within the

cafeteria, the hallway outside the cafeteria and the parking lot. Furthermore, the brief on behalf of the Hospital concedes that

solicitation is allowable on the entire service floor, the entire first floor except the main lobby and admitting area, the entire second floor except the chapel, cafeteria, and hallway, and the employee lockers and lounges on the nursing floors. It also concedes that distribution of literature is allowable in the hallways on the service floor, the hallways on the first floor, and the employee lounges and locker rooms on the nursing floors.

The Board's order is entitled to enforcement in these areas.

The Hospital would have us issue broad guidelines applying to union solicitation in hospitals generally and in this Hospital's corridors particularly. However, the record in this case does not contain evidence justifying such approach. Furthermore, we do not see it as our function to issue such guidelines involving as it does evaluating and interpreting factual material and a promulgation of legal conclusions based upon such interpretations. Accordingly, we limit ourselves to the matters which lend themselves to determination at this time.

Unquestionably the Hospital's January 31, 1975 rule was too restrictive in that it prohibited virtually all solicitation and distribution even in employee-only lounges and locker rooms on the nursing floors. The April 15, 1976 memorandum was somewhat less restrictive, but it was never posted.

Accordingly, it is our conclusion that the Board's order is entitled to be enforced insofar as it pertains to the conceded areas mentioned above, including the service floor area, the first floor except the lobby and admitting areas, the second floor except the chapel, cafeteria and hallway, and the employees' lockers and lounges. In addition, the Board's order is entitled to be enforced insofar as it pertains to the cafeteria, parking lot and sixth floor engineering department, and, of course, its order removing the reprimands. As to the immediate patient care areas, this is a vague and a broad term, and we are unable to rule on in which corridors, for example, solicitation should be prohibited. Now it is for the Board, based upon its familiarity with the evidence in the case, to define its term "immediate patient care areas" and to make specific findings and conclusions with respect to the treatment areas and the corridors which are to be protected as immediate patient care areas. The Board's order as to these corridors is too vague and thus is overly broad and is therefore not enforceable.

Accordingly, the order of the Board will be enforced in the respects mentioned, and otherwise the cause will be remanded to the Labor Board for further proceedings in accordance with the views expressed herein.