COORS CONTAINER COMPANY,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

Aluminum Workers International Union,
AFL–CIO, Intervenor.

No. 78–1808.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 27, 1979.

Decided Aug. 27, 1980.

1284

Earl K. Madsen of Bradley, Campbell & Carney, Golden, Colo., for petitioner.

William M. Bernstein, Atty., Washington, D. C. (Kenneth B. Hipp, Deputy Asst. Gen. Counsel, John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., with him on brief), for respondent.

Sander N. Karp of Karp & Goldstein, Denver, Colo., filed a brief for intervenor.

Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Coors Container Company appeals from a decision and order of the National Labor Relations Board (NLRB or Board), ruling that Coors Container violated section 8(a)(1) of the National Labor Relations Act (NLRA or the Act) by prohibiting display of a boycott sign and by interrogating two employees about their reasons for displaying the sign and their union sympathies, and violated both § 8(a)(1) and (3) by disciplining the two employees. 238 NLRB No. 185 (1978). The Board has filed a cross–application for enforcement of its order. The Aluminum Workers International Union, AFL–CIO was the charging party in the NLRB hearing and is intervenor in this action.

In April 1977, employees of Adolph Coors Brewery Company (the brewery) engaged in a strike and boycott of their employer. Striking employees picketed the gates of the industrial park shared by the brewery and its wholly owned subsidiary, the Coors Container Company (Coors) and distributed boycott signs to employees. Coors Container employees were not on strike and were not represented by a union, but had to cross the picket line to report to work. Pursuant to instructions from the president of the parent company, the Coors security supervisor directed guards to stop, identify, and notify the supervisor immediately of any vehicle displaying a boycott sign while on the plant site. The supervisor also told the guards that such signs were to be removed from the vehicles.

Two Coors Container employees, Andrew Clements and Mark Mugge, were stopped by security guard Paul Estala for displaying a sign which read "Boycott Coors–Scab Beer" as they were leaving the plant in Clements' truck at the end of the night shift. The employees placed the sign in the truck window as they approached the guard station, approximately 200 to 300 feet from the industrial park exit and about 1½ to 2 miles from any production facility.

Testimony credited by the administrative law judge established the following facts concerning the confrontation. After Clements stopped the truck, Estala told Mugge and Clements to remove the sign and give it to him. When the employees refused to remove or relinquish the sign, Estala took their company identification cards, asked the two if they were sympathetic to the brewery strike and stated that they should not be coming to work if they were in sympathy with the strikers. A heated conversation ensued between Mugge and Estala. Mugge contended that they did not need to remove the sign since the truck was private property and stated that they were using the sign to pass through the picket line safely. Estala again asked if they were sympathetic to the strike. During the confrontation between Mugge and Estala both men were visibly upset and practically yelling. Mugge used expletives in the interchange and called Estala a "m_ _ _ _ _ f_ _ _ _ _." Estala directed Clements to pull off the roadway, and called for a guard officer.

When security lieutenant Douglas McClure arrived in response to Estala's call and asked Mugge and Clements to remove the sign, a similar confrontation occurred between Mugge and McClure with Mugge asserting that they had a right to display the sign in the truck. When Estala asked to see the truck's registration, Mugge got out of the truck, banged his fist on its hood, used the same m_ _ _ _ _ f_ _ _ _ _ obscenity in referring to the guards and threatened to report them to the company vice–president. Donald Long, security supervisor for the Coors plant, arrived and after a briefing by McClure began questioning Clements; Mugge interrupted him to complain about Estala and again used foul language. Long told Mugge and Clements he would recommend that some action be taken against the two, who then left the premises.

When Mugge and Clements returned to the plant for their next shift, they were questioned by company officials concerning the incident and their reasons for displaying the sign. At that time Mugge was discharged and Clements was given a verbal warning. Mugge's termination report form indicated he was discharged for "insubordination–gross misconduct." A written rec-

ord of the verbal warning given to Clements was placed in his employment file.

In its petition to this Court, Coors raises the issue whether the Board's decision and order in this case are supported by substantial evidence in the record. More specifically, Coors challenges the Board's conclusions that Coors violated § 8(a)(1) or (3) of the Act (1) by promulgating and enforcing a rule prohibiting employees from displaying boycott signs on company premises, (2) by discharging Mark Mugge and disciplining Andrew Clements, and (3) by interrogating the employees concerning their sympathies regarding the brewery strike and their reasons for displaying the boycott sign.

Section 7 of the NLRA guarantees employees "the right . . . to form, join or assist labor organizations . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(1) of the Act makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 7[157]." 29 U.S.C. § 158(a)(1). Section 8(a)(3) establishes that it is an unfair labor practice for an employer to discriminate "in regard to . . . tenure of employment . . . to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

In reviewing determinations by the NLRB, our function is limited to determining whether the findings of violations are supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951). Credibility determinations and rational inferences are within the Board's province and ordinarily will not be disturbed on appellate review. *NLRB v. Gold Spot Dairy, Inc.*, 417 F.2d 761, 762–63 (10th Cir. 1969).

## I

It is undisputed that Coors created a rule prohibiting display of signs or stickers urging a boycott of the company's product on Coors property in work or nonwork areas. Further, it is not disputed that Coors security guards were instructed to detain vehicles displaying such signs. Coors contends the finding that display of the boycott sign was concerted activity protected by Section 7 of the Act, unlawfully interferred with by enforcement of the Coors' rule, is error because (1) special circumstances at the plant justified Coors' proscription of signs, and (2) display of the boycott sign was indefensible, unprotected activity.[1]

■ In contending that special circumstances justified the prohibition, Coors cites testimony by officials that the rule was necessary "to monitor internal plant security, and also guard against incidents at the gates." Ordinarily an employer may not prohibit distribution of union literature or solicitation during non-working time in non-working areas. *NLRB v. Magnavox Co.*, 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974); *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). A company may, however, prohibit protected activity when special circumstances make such a prohibition necessary to maintain production and discipline. *Id.* at 801–03, 65 S.Ct. at 987. The mere assertion by an employer that special circumstances exist is, of course, insufficient to justify curtailment of the employee's guaranteed rights. *NLRB v. Montgomery Ward & Co.*, 554 F.2d 996, 1000 (10th Cir. 1977). In this case, the boycott sign was displayed over a mile from any work facility, inside the employee's vehicle. Further, the wording of the sign was not so provocative as to remove protection of the Act. *See Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283–84, 94 S.Ct. 2770, 2780–2781, 41 L.Ed.2d 745 (1974); *Linn v. United Plant Guard Workers, Local 114*, 383 U.S. 53, 60–61, 86 S.Ct.

---

1. Coors also seeks to justify the promulgation and enforcement of the rule prohibiting boycott signs on grounds that (1) Mugge's use of vulgar and offensive language removed the conduct from protection of the Act and (2) the employees displayed the sign out of fear. These arguments have relevance only to the Board's finding that Coors' disciplining of these employees was an unfair labor practice and are considered in Part II.

657, 661–662, 15 L.Ed.2d 582 (1966). We believe there is substantial evidence in the record to support the Board's determination that Coors failed to show special circumstances sufficient to justify its prohibition rule.

■ Concerted activity for the purpose of mutual aid or protection is protected by section 7 unless such activity is unlawful, violent, in breach of contract or "indefensible." *NLRB v. Washington Aluminum Co.,* 370 U.S. 9, 17, 82 S.Ct. 1099, 1104, 8 L.Ed.2d 298 (1962). Coors relies on *NLRB v. Local Union No. 1229, International Bhd. of Electrical Workers,* 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195 (1953), for its contention that the conduct was indefensible. It reads that case as establishing a flat rule that any boycott by employees of their employer's product is indefensible activity. The holding is not so broad. The Court emphasized two elements: (1) the attack was on the quality of the employer's product, and (2) it was not connected to a labor controversy. *Id.* at 468, 471, 477, 74 S.Ct. at 179. *See NLRB v. Frontier Guard Patrol, Inc.,* 399 F.2d 716, 724 n. 9 (10th Cir. 1968); *NLRB v. National Furniture Mfg. Co.,* 315 F.2d 280, 284–85 (7th Cir. 1963). Neither of these elements is present in the instant case: the boycott sign did not disparage the quality of Coors beer, and urging a boycott in support of the striking brewery employees clearly is related to a labor dispute. Hence, petitioner's argument fails. *Accord, Texaco, Inc. v. NLRB,* 462 F.2d 812 (3d Cir.), *cert. denied,* 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 302 (1972). *Cf. NLRB v. Fruit & Veg. Packers Local 760,* 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964) (consumer picketing to discourage purchase of primary employer's products).

We are satisfied that the record as a whole provides substantial evidence for the Board's finding that promulgation and enforcement of a rule prohibiting boycott signs on Coors' premises–by employees properly on the premises–violated § 8(a)(1) of the NLRA.

## II

The Board found that Coors' reprimand of Clements and discharge of Mugge interfered with the employees' exercise of section 7 rights in violation of § 8(a)(1) and discouraged membership or support of a labor organization in violation of section 8(a)(3).

### A

■ Coors challenges the Board's finding as it relates to the reprimand of Clements partly on the ground that "[h]e was given only a 'verbal warning,' which is 'not . . . a written reprimand under the Discipline and Discharge Policy.' " This is a distinction without a difference. *See St. John's Hosp. and School of Nursing v. NLRB,* 557 F.2d 1368, 1377 n. 10 (10th Cir. 1977). Coors admits that the warning was the result of Clements' display of the boycott sign. By disciplining Clements for engaging in activity protected by section 7, Coors discouraged union membership in violation of the Act. *See Groendyke Transport, Inc. v. NLRB,* 530 F.2d 137, 142 (10th Cir. 1976).

### B

Coors challenges the Board's finding that the discharge of Mugge was an unfair labor practice, arguing that the activity of displaying the sign was motivated by fear rather than by commitment to principle. The employees testified that the sign was displayed to protect them and the truck from being harmed by the picketing strikers. Coors contends this establishes they were not making "common cause" with the strikers and hence their activity was unprotected. *See NLRB v. Union Carbide Corp.,* 440 F.2d 54 (4th Cir.), *cert. denied,* 404 U.S. 826, 92 S.Ct. 96, 30 L.Ed.2d 55 (1971).

■ The Board made a factual finding that these employees were also motivated by a desire to encourage the brewery strikers. We find that this determination is supported by substantial evidence on the record, which shows that Coors believed the employees were seeking to encourage the strikers and that the display was intended by Mugge and Clements to boost the morale

of the strikers. Presumably, had the employees been motivated solely by fear, they would have been willing to remove the sign, as requested by the guard, and display it after passing the guard station but before reaching the gate. Even if fear played a part in the decision to display the sign, it was not the sole motivating factor and did not render the activity unprotected.

Coors contends its sole reason for Mugge's discharge was his use of vulgar language to the security guard and guard supervisor. The Board found that Mugge did use vulgar language during the incident but held it was not so egregious as to remove the protective mantle of the Act.

█ The NLRA does not interfere with an employer's right to discharge an employee for a good reason, a bad reason or no reason at all so long as a contributing motivation in the discharge is not antiunion animus, *Betts Baking Co. v. NLRB*, 380 F.2d 199, 203 (10th Cir. 1967), or the fact that an employee engaged in protected activity. *See Groendyke Transport, Inc. v. NLRB*, 530 F.2d 137 (10th Cir. 1976); *NLRB v. American Coach Co.*, 379 F.2d 699 (10th Cir. 1967). However, egregious or flagrant conduct by an employee may justify discharge of that employee even though the conduct occurred in the course of otherwise protected activity. *Timpte, Inc. v. NLRB*, 590 F.2d 871 (10th Cir. 1979). In *Timpte* the employee refused to refrain from using filthy language and from defaming employees and company officials in literature distributed as part of his campaign for an office in the union; we distinguished that conduct from an "impulsive behavior" situation. 590 F.2d at 873 (citing *NLRB v. Thor Power Tool Co.*, 351 F.2d 584 (7th Cir. 1965)).

█ In the instant case, the Board's conclusion that Mugge's conduct was not so egregious as to forfeit the protection of the NLRA was reached by application of the standard set forth in *NLRB v. Thor Power Tool Co.*, 351 F.2d 584, 587 (7th Cir. 1965): "[N]ot every impropriety committed during such activity places the employee beyond the protective shield of the act. The em-

ployee's right to engage in concerted activity may permit some leeway for impulsive behavior, which must be balanced against the employer's right to maintain respect and order." In *Thor* an employee lost his temper during a grievance proceeding, uttering at least one cuss word and then referring to a company superintendent by another vulgar expression. His discharge, ostensibly for that outburst, was found by the Board to be improper, and the Seventh Circuit upheld the determination. We think the conduct at issue here, though vulgar and not to be condoned, is an example of the impulsive behavior we distinguished in *Timpte*.

Despite petitioner's contrary assertions, the record presents no other instance of a discharge of a Coors employee for vulgar language alone. The record reveals that Coors officials clearly were concerned with the effect of the sign both on the container company employees and the striking brewery employees, the possibility of contacts being established between the two groups, and the employees' reason for displaying the sign.

In sum, we hold the evidence in the record, although not overwhelming, supports the Board's conclusion that Coors disciplined the two employees in violation of NLRA §§ 8(a)(1) and (3).

### III

The Board found that Coors violated § 8(a)(1) of the Act by unlawfully interrogating Mugge and Clements in two instances: (1) when the guard Estala asked them whether they were sympathetic to the strike by brewery employees, and (2) when, during the disciplinary hearing, Coors officials asked the employees why they had displayed the sign. Coors offers no reason for its objection to the Board's finding that questioning during the disciplinary hearing was unlawful interrogation; rather, it simply asserts "[t]here is nothing improper about such questioning." Coors challenges the conclusion that Estala unlawfully interrogated the employees on the grounds that

it is supported only by "self-serving" testimony of Mugge, and there was conflicting evidence. It asserts that Estala's denial of the questioning, ("If I did, I don't recall. But, I'm almost sure I didn't.") joined with the failure of Mugge and Clements to report this questioning to other guards, mandates a finding in favor of Coors. We disagree.

 Not all interrogation of employees by an employer violates the Act, "[T]he issue is whether the proof demonstrates interference, restraint or coercion of employees in violation of § 8(a)(1)." *Groendyke Transport, Inc. v. NLRB*, 530 F.2d 137, 144 (10th Cir. 1976). The administrative law judge credited the testimony of Mugge and Clements as against that of Estala on this point, and the Board affirmed her findings. Contrary to petitioner's assertion, this testimony is not the only record evidence supporting the finding of interrogation concerning union sympathy. The written statement Mugge presented at the disciplinary hearing recounted Estala's questions and comments concerning the employees' sympathy with the brewery strike.

Estala's statement that if Mugge and Clements were union sympathizers they "shouldn't be working at Coors" is less subtle than the statement deemed coercive in *NLRB v. Gold Spot Dairy, Inc.*, 417 F.2d 761 (10th Cir. 1969), where a supervisor advised an employee to "Sort of limit your [union] meetings." Testimony by Coors witness Glen Kline established that during the disciplinary hearing Coors officials sought to learn why the employees displayed the sign. His description indicates the disciplinary hearing had a cross-examination atmosphere and the officials focused on the possibility that the employees were sympathetic to the strikers.

Although there is conflicting evidence, we are satisfied the record as a whole sufficiently supports the finding that the questioning involved in this case was coercive and interfered with the section 7 rights of employees to engage in concerted activities for mutual aid and protection.

*See NLRB v. Gold Spot Dairy, Inc.*, 417 F.2d 761 (10th Cir. 1969).

Enforcement granted.